[Civ. No. 28921.   Second Dist., Div. Three.   Dec. 1, 1966.]

DORIS PONCHER et al., Plaintiffs and Appellants, v. CHARLES W. BRACKETT et al., Defendants and Respondents.

770

Jerome L. Ehrlich and Jack B. Silver for Plaintiffs and Appellants.

Cooper & Nelsen and Richard M. Moore for Defendants and Respondents.

FORD, J.—This is an appeal from a judgment of dismissal which was granted pursuant to section 581, subdivision 3, of the Code of Civil Procedure after the demurrer of the defendants Brackett to an amended complaint had been sustained without leave to amend.

Our consideration will be limited to the fourth, fifth and seventh causes of action inasmuch as the plaintiffs have confined their argument to those portions of the amended complaint. The parties agree that the basic problem on this appeal is that of the legal responsibility of a person who voluntarily assumes control of another person with knowledge of the latter's propensity to cause harm to others. More concretely, the question to be resolved is whether the plaintiffs have stated a cause of action against the defendants Brackett for personal injuries alleged to have been sustained by the plaintiff Doris Poncher because of an assault upon her by a minor grandson of those defendants.[1]

---

[1]The allegations of the seventh cause of action were in part as follows:
1. The defendants, on or prior to the assault on Doris Poncher, knew of similar acts which had been committed by the minor, knew that he was "emotionally and psychiatrically disturbed," and had been warned by public officials and others that he was potentially dangerous to the general public. 2. The defendants "did negligently and recklessly fail to control, prevent or supervise the conduct" of the minor in that "(1) he was, without supervision, permitted to live alone in separate quarters, drive an automobile, and walk by himself in the immediate area in which he was

With respect to the sufficiency of a complaint in an action brought against a child and his parents, it was said in *Ellis* v. *D'Angelo*, 116 Cal.App.2d 310, at page 317 [253 P.2d 675]: "The third count is without question sufficient to state a cause of action against the defendant parents. It alleges that these defendants employed plaintiff for the first time to act as baby sitter for their son, that the son 'habitually engaged in violently attacking and throwing himself forcibly and violently against other people, and violently shoving and knocking them, all of which said defendant parents knew,' that said 'parents negligently and carelessly failed to warn plaintiff of said child's said traits and disposition and negligently and carelessly failed to inform plaintiff that said child habitually indulged in such violent and furious attacks on others,' and that shortly after plaintiff entered on her duties in the home the child attacked her to her resultant injury." (See *Singer* v. *Marx*, 144 Cal.App.2d 637, 644-645 [301 P.2d 440]; 2 Witkin, Summary of California Law (7th ed. 1960) Torts, §§ 306-307, pp. 1502-1504; Harper and Kime, *The Duty to Control the Conduct of Another* (1934) 43 Yale L.J. 886, 893-895.)

In section 316 of the Restatement Second of Torts the parental duty is stated as follows: "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." Dean Prosser states: ". . . the parent has a special power of control over the conduct of the child, which he is under a duty to exercise reasonably for the protection of others. . . . Probably, however, the effect of the decided cases is that there is no liability upon the parent unless he has notice of a specific type of harmful conduct, and an opportunity to interfere with it. It has been said that it would be

residing; (2) no warning of said dangerous propensities was given to the public or to persons living in the immediate neighborhood in which he was residing; (3) no reasonable precautions were taken to prevent, restrain, inhibit or guard the general public against the criminal and assaultive tendencies and conduct'' of the minor. 3. Prior to the time of the alleged assault, ''with full knowledge of the said recent criminal acts, psychiatric disturbances, assaultive, vicious, dangerous, violent and destructive tendencies and propensities'' of their minor grandson, ''and the warnings of the possible and potential danger . . . to the general public,'' the defendant grandparents ''voluntarily and gratuitously assumed and accepted custody and control'' of the minor.

extending the hardships of harassed and exasperated parents too far to hold them liable for general incorrigibility, a bad education and upbringing, or the fact that the child turns out to have a nasty disposition. The parent may, however, be under a duty to warn others who may suffer from such charactersitics; and it is undoubtedly true that the parent must take these factors into account in what he does once specific dangerous tendencies have been manifested." (Prosser on Torts (3d ed. 1964) § 117, p. 894.)

The ability to control the child, rather than the relationship as such, is the basis for a finding of liability on the part of a parent. (See Harper and Kime, *The Duty to Control the Conduct of Another, supra,* 43 Yale L.J. at p. 893.) In the case of a grandparent it is even more evident that the absence of such ability is fatal to a claim of legal responsibility. The importance of the element of control is clearly expressed in the reasoning of the court in *Carmona* v. *Padilla,* 4 App.Div.2d 181 [163 N.Y.S.2d 741], affd. 4 N.Y.2d 767 [172 N.Y.S.2d 820, 149 N.E.2d 337]. Therein Justice Botein stated (163 N.Y.S.2d, at pages 742-743) : "Appellant's liability does not depend solely on her status as the grandmother of the boy who shot the arrow that caused the infant plaintiff's injury, nor on her status as co-owner of the property on which the incident occurred [citation]. The jury could have found that appellant had exercised a substantial measure of supervision and control over the infant defendant for many years, and it is undisputed that the narrow, confined area in which he was shooting his arrow was part of her house. These combined circumstances invested her with certain authority and accompanying responsibility to curb any conduct of her 9-year-old grandson that might foreseeably result in harm to others. Perhaps her duty to supervise her grandson was not, as an isolated responsibility, as extensive as that of a parent—a duty probably related to the powers that parents . possess to restrain their children's conduct [citations]. However, the position the grandmother occupied in the house and household where the accident occurred gave her much greater authority to restrain her grandchild than would be enjoyed by a stranger; and in circumstances where strangers are endowed with relatively slight supervision for [*sic*] control over children they have been held to be under a duty to prevent injury by children to others [citations]."

The governing principle is expressed in section 319 of the Restatement Second of Torts as follows: "One who takes

charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." In Comment *a* to that section it is stated that the rule applies to two situations, the first situation being "one in which the actor has charge of one or more of a class of persons to whom the tendency to act injuriously is normal," and the second situation being "one in which the actor has charge of a third person who does not belong to such a class but who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know."[2] (See, generally, Prosser on Torts (3d ed. 1964) § 54, pp. 344-346.)

■ In the seventh cause of action (see footnote 1 of this opinion) it was pleaded that the defendant grandparents had custody and control of their minor grandson, that they knew that he was likely to cause bodily harm to others if he was not controlled, and that they failed to exercise reasonable care to control him so as to prevent him from doing such harm. Consequently, it was error to sustain a general demurrer with respect to that cause of action.

■ As to the fourth cause of action, the plaintiffs rely upon the bare allegation that the defendant grandparents were the "lawful guardians" of the minor, without further allegations as to the matter of control of the minor. The pleading is without factual foundation inasmuch as it was conceded at the oral argument before this court that the grandparents were not such guardians. Consequently, further consideration of that cause of action is not required. (See *Lincoln* v. *Didak,* 162 Cal.App.2d 625, 629 [328 P.2d 498].)

■ In the fifth cause of action there was incorporated, by reference to a preceding cause of action, an allegation that the defendant grandparents "at all times herein mentioned stood in relation of *loco parentis*" to their minor grandson and that they had "physical or legal custody or control" of the grandson. On this appeal the plaintiffs assert that "here a duty to control is alleged to have existed because the grandparents stood in the relation of *loco parentis* to the minor defendant." But the allegation as to that relationship constituted a conclu-

[2]In the article by Harper and Kime heretofore cited it is stated (43 Yale L.J. at pages 897-898): "An obvious application of the principle under discussion would appear to be situations in which the defendant has control over another who is by reason of some social or mental maladjustment a dangerous person."

sion of law rather than the pleading of facts giving rise to a duty on the part of the grandparents to control the conduct of the minor. (See *Dino, Inc.* v. *Boreta Enterprises, Inc.*, 226 Cal.App.2d 336, 339-340 [38 Cal.Rptr. 167].) Aside from the fact that the plaintiffs have not expressed any reliance upon the other allegation quoted in this paragraph, that allegation is uncertain and imports nothing of substance that is not embraced in the allegations of the seventh cause of action which we have determined to be a statement of facts sufficient to constitute a cause of action. An opportunity to amend the fifth cause of action would be of no material advantage. No prejudice has been suffered by the plaintiffs by reason of the ruling on demurrer with respect to that cause of action.

The judgment is reversed with directions to the superior court to overrule the general demurrer to the seventh cause of action of the fourth amended complaint.

Shinn, P. J., and Kaus, J., concurred.