[No. A029699. First Dist., Div. One. Dec. 16, 1986.]

HORACE B. ROBERTSON, Plaintiff and Appellant, v.
MARILYN WENTZ, Defendant and Respondent.

1284

**COUNSEL**

Glen L. Moss for Plaintiff and Appellant.

Thomas McInerney, Seth J. Schwartz and Haims, Johnson, MacGowan & McInerney for Defendant and Respondent.

## OPINION

NEWSOM, J.—On January 20, 1982, Roy Wentz, Jr. (hereafter Roy), then a minor, robbed a bookstore in San Lorenzo, and in the process shot and killed Renee Robertson. Roy was apparently under the influence of drugs at the time of the crimes. Appellant, who is Renee Robertson's surviving spouse, filed an action against respondent for wrongful death, based both upon her alleged negligence in controlling and supervising her minor son, and statutory violations. The dispute before us concerns the lower court's entry of summary judgment in favor of respondent on all causes of action.

Roy is the son of respondent and Roy Wentz (hereinafter Roy, Sr., or the father.) Respondent and Roy, Sr., were married in 1957, and filed for divorce in May of 1976, the decree becoming final in March of 1978. The custody provision awarding respondent sole legal custody of Roy was never modified, and was in effect at the time of the shooting. Respondent was also awarded child support. Respondent remarried and moved to Middletown, California, in Napa County.

Roy lived with respondent after the divorce until 1979, when he moved in with his father in San Lorenzo. Between July and September of 1981, Roy resided with his employer, Gordon Sales. Then in September of 1981, Roy returned briefly to respondent's house in Middletown. Respondent received no child support payments during the time Roy lived with his father, or during the three months in 1981 when he again resided with her. In mid-January of 1982, Roy left respondent's house and recommenced living with his father.

Roy was introduced to guns early in life, receiving a .22-caliber weapon for his fifth birthday. However, as the record shows, his parents allowed him to actually hold the gun only after he had taken a safety course at about age 10. Respondent was aware that, by the time Roy moved back with her, he owned two rifles, a shotgun, and two pellet pistols. To respondent's knowledge, Roy had never misused the guns or demonstrated a propensity to do so. She believed him well-disciplined in the use of firearms.

Roy began drinking on a social basis and smoking marijuana at age 13. Respondent testified that she did not become aware of her son's drinking until 1981, when he was about 16 years old. She discovered his use of cocaine and marijuana in the summer of 1981, when it seemed that "every cent" he earned went for drugs supplied by his employer. In the summer of 1981, Roy asked respondent if he could move back in with her to "get away from the drugs, the booze, the whole thing." Respondent testified

that neither she nor her present husband ever took any disciplinary action other than spending many hours counseling Roy about his problems and imposing strict rules upon him.

Respondent knew of only one disciplinary problem her son had at school: after discovering that he had not passed the GED exam (a high school equivalency test), Roy went to school "irate" and threw a cigarette on the school grounds; thereafter when Roy denied the vice principal's accusations, respondent was called in to discuss the boy's behavior. She was also aware of a single criminal incident, a misdemeanor arrest for possession of marijuana. Respondent spoke with her son about these incidents, but did not otherwise discipline him.

Respondent characterized Roy as an average student, very athletic, who played football and wrestled. She testified, however, that as her son approached 18 years, he became scared; "he was not prepared to go out and face the world." According to respondent, Roy had no self-confidence. She perceived her son as "a 12-year-old boy in this great big grown-up body."

The shooting took place five days before Roy turned eighteen. The morning of the incident, respondent's daughter, Kelly, called her to say that Roy was coming back to Middletown to get his own apartment and go to school. Kelly was very upset and told respondent that Roy sounded "really weird"; she felt that "something was really wrong." Roy was highly intoxicated on hallucinogenic mushrooms and alcohol, and had taken his father's loaded .38-caliber special that morning from an unlocked bedside table drawer. Although respondent testified that she had reason to believe Roy's father kept guns in his house, she was not sure that he did so. She had never been to the home of Roy's father in San Lorenzo, and had not discussed his guns with her former husband prior to the shooting.

Roy's living arrangements at the time of the shooting are not entirely clear. Roy felt that he was then residing with his mother, and merely visiting his father. Respondent testified, however, that she and Roy, Sr., had agreed that their son was to stay with his father, get counseling and possibly visit military recruitment centers. She felt that Roy needed guidance and counseling. On January 15, 1982, respondent had discovered Roy in bed with his 13-year-old girlfriend, and had ejected him from the house. After Roy left, respondent called Roy, Sr., to tell him their son was coming. Respondent knew of no immediate or long range plans for her son to move back in with her.

Appellant argues that the trial court erred in granting respondent's summary judgment motion and dismissing his negligence cause of action. There

are two facets to appellant's negligence action: first, that respondent negligently failed to supervise and control her minor son; and second, that respondent did not exercise due care "in safeguarding firearms from her son." Contending that his negligence action presents triable issues of fact which remain to be litigated, appellant insists that entry of summary judgment against him was improper.

It is well settled that summary judgment is a "'drastic procedure to be used sparingly and with circumspection . . . .'" (*Harris v. De La Chapelle* (1976) 55 Cal.App.3d 644, 647 [127 Cal.Rptr. 695].) A defendant moving for summary judgment has the burden of establishing that the action is without merit; a factual showing negating all causes of action on all theories is required. (*Tresemer v. Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Harris v. De La Chapelle, supra,* at p. 647.) "If he fails in that burden, summary judgment must be denied despite the lack of opposing declarations." (*Tresemer v. Barke, supra,* at p. 666.) But if all material issues of fact are eliminated and the declarations filed in support of the motion establish that the defendant is entitled to judgment as a matter of law, summary judgment should be granted. (*Tauber-Arons Auctioneers Co. v. Superior Court* (1980) 101 Cal.App.3d 268, 273 [161 Cal.Rptr. 789].) "'Applicable substantive law determines the facts necessary to support a particular theory of relief and hence the sufficiency of properly framed factual statements in declarations to support a summary judgment.'" (*Tresemer v. Barke, supra,* 86 Cal.App.3d at pp. 666-667.)

The essential elements of a cause of action for negligence are (1) defendant's legal duty of care to plaintiff, (2) defendant's breach of duty by negligent act or omission, (3) injury to plaintiff as the result of the breach, and (4) compensable damages. (*Rosales v. Stewart* (1980) 113 Cal.App.3d 130, 133 [169 Cal.Rptr. 660].)

The case before us presents the issue of whether respondent, in her role as parent, had a legal duty to prevent her son from shooting Renee Robertson. "Whether a duty is owed is simply a shorthand way of phrasing what is the '"essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."'" (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) "'While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. . . .'" (*Id.,* at p. 806; *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

The primary consideration in establishing the element of duty is the foreseeability of the risk. (*Sun 'N Sand, Inc. v. United California Bank*

(1978) 21 Cal.3d 671, 695 [148 Cal.Rptr. 329, 582 P.2d 920]; *DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 702 [133 Cal.Rptr. 920].) "'As a general principle, a "defendant owes a duty of care to all persons who are *foreseeably* endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous."'" (*Tresemer* v. *Barke, supra,* 86 Cal.App.3d 656, 670.) "Foreseeability is a question of fact unless decisional law has established that there could be no foreseeability of the risk under same or similar fact situations." (*Forrand* v. *Foodmaker, Inc.* (1986) 182 Cal.App.3d 196, 199 [227 Cal.Rptr. 74].)

As a corollary principle, "[i]n general, one owes no duty to control the conduct of another person [citation] . . . ." (*Megeff* v. *Doland* (1981) 123 Cal.App.3d 251, 257 [176 Cal.Rptr. 467]; see also *Harland* v. *State of California* (1977) 75 Cal.App.3d 475, 480 [142 Cal.Rptr. 201].) Exceptions have been delineated where the defendant stands in a "special relationship" to either the person whose conduct needs to be controlled or the foreseeable victim of that conduct. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Megeff* v. *Doland, supra,* 123 Cal.App.3d at p. 257.) Pertinent here is the special relationship recognized in section 319 of the Restatement Second of Torts and California law: "'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.'" (*Id.,* at p. 257.)

Thus, "[i]n the absence of statute, ordinarily a parent is not liable for the torts of his minor child. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 652, p. 2931.)" (*Van Den Eikhof* v. *Hocker* (1978) 87 Cal.App.3d 900, 904 [151 Cal.Rptr. 456].) But while no common law vicarious liability is imposed upon parents for the torts of their children, it is settled "'"that a parent may become liable for an injury caused by the child where the parent's negligence made it possible for the child to cause the injury complained of, and probable that it would do so." [Citations.]'" (*Weisbart* v. *Flohr* (1968) 260 Cal.App.2d 281, 291 [67 Cal.Rptr. 114].)

California follows the Restatement rule (Rest. 2d Torts, § 316), which finds a "special relationship" between parent and child, and accordingly places upon the parent "a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." (*Costello* v. *Hart* (1972) 23

Cal.App.3d 898, 900 [100 Cal.Rptr. 554]; *Poncher* v. *Brackett* (1966) 246 Cal.App.2d 769, 771 [55 Cal.Rptr. 59].) In *Weisbart* v. *Flohr, supra,* 260 Cal.App.2d 281, the court observed: "''"The parent will incur liability for his minor child's intentional acts of violence or damage to persons or property if, knowing of the child's vicious or destructive tendencies or acts, he fails to exercise reasonable measures to restrain or discipline the child and thus encourages or acquiesces in such misconduct on the part of the child."''" (*Id.*, at p. 291.)

Relying on *Reida* v. *Lund* (1971) 18 Cal.App.3d 698, 702 [96 Cal.Rptr. 102], appellant contends that the record presents a triable issue of fact as to respondent's negligence in failing to control and supervise Roy. In *Reida*, the parents kept a "rifle and its supply of ammunition in the family garage in a locked cabinet . . . ." (*Id.*, at p. 703.) Their son knew the location of the keys to the cabinet. In a disturbed state, the child took the rifle and fired at motorists on the freeway, killing three people and injuring others seriously before taking his own life. The parents became defendants in a negligence action, and filed a summary judgment motion in which they claimed ignorance of the child's emotional instability and "adamantly denied any forewarning" of their son's behavior. (*Id.*, at p. 702.) In response, plaintiffs filed the declaration of a psychologist, who, upon looking into the matter, characterized the child as suffering from "schizophrenia, paranoid type," and opined that the parents "knew or should have known that (the child) was capable of violent, irrational acts and might use any weapon available to him . . . ." (*Id.*, at p. 702.)

Reasoning from the basic premise that "[p]arents are responsible for harm caused by their children only when it has been shown that 'the parents as reasonable persons previously became aware of habits or tendencies of the infant which made it likely that the child would misbehave so that they should have restrained him in apposite conduct and actions'" (*id.*, at p. 702), the court concluded that summary judgment was properly entered in favor of the parents "on the issue of negligence in the training, supervision, and control" of their son (*id.*, at p. 703). But the court determined that the cause of action for "negligent safeguard of a dangerous instrumentality" stated against the father raised a "triable question of fact whether his act in leaving a lethal weapon in a place accessible to his children amounted to proper exercise of due care or whether it amounted to negligent safeguard of a deadly weapon." (*Id.*, at p. 707.)

Two factors distinguish *Reida* from the present case, the first of which is that the record before us is devoid of any evidence of respondent's awareness of Roy's violent tendencies. Respondent was aware that her son was abusing drugs and had disciplinary problems at school. She also knew

that he was emotionally distressed over the impending loss of his minority. But according to the undisputed evidence, respondent was not aware of a single incident of violent or, save his drug use, even criminal behavior. Second, and more significantly, respondent had no effective control of her minor son at the time of the shooting. In the four years preceding the shooting, Roy lived with his father for all but a few months. Respondent never visited Roy at the home of his father, and consequently did not know if guns were readily available to the boy there. Roy was residing with his father when the shooting occurred. He obtained the murder weapon from his father's home, without respondent's knowledge.

 "'The ability to control the child, rather than the relationship as such, is the basis for a finding of liability on the part of a parent. [Citation.] . . . [T]he absence of such ability is fatal to a claim of legal responsibility.' The ability to control is inferred from the relationship of parent to minor child, as it is from the relationship of custodian to charge; yet it may be disproved by the circumstances surrounding the particular situation." (*Megeff* v. *Doland, supra,* 123 Cal.App.3d 251, 261; quoting from *Poncher* v. *Brackett, supra,* 246 Cal.App.2d 769, 772.) Knowledge of dangerous habits and ability to control the child are prerequisites to imposition of liability. (*Costello* v. *Hart, supra,* 23 Cal.App.3d 898, 901; *Singer* v. *Marx* (1956) 144 Cal.App.2d 637, 644-645 [301 P.2d 440].) In *Costello, supra,* at p. 901, the court noted that in cases "where the parent did not observe and was not in a position to control the conduct which endangered the plaintiff, recovery was denied on the ground that there was no showing that the parent knew of any dangerous tendency. [Citations.]"

We thus conclude that, lacking physical custody and care of Roy at the critical time, and without notice of his propensity to commit violent crimes, respondent cannot be found liable to appellant for her son's conduct on the theory that she negligently controlled and supervised him. (*Reida* v. *Lund, supra,* 18 Cal.App.3d 698, 703.) Her mere legal custody of Roy is an insufficient basis upon which to predicate common law liability. (*Poncher* v. *Brackett, supra,* 246 Cal.App.2d 769, 773.)

Appellant submits that respondent's awareness of her son's "numerous troubles" and failure to obtain counseling for the boy, or otherwise control his abuse of drugs, permits a finding of liability on this theory. But it is only the manifestation of specific dangerous tendencies which triggers a parental duty to exercise reasonable care to control the minor child in order to prevent intentional harm to third persons. (*Poncher* v. *Brackett, supra,* 246 Cal.App.2d at p. 772.)[1] Speaking of parents, the court in *Weisbart* v.

---

[1]The court in *Poncher, supra,* 246 Cal.App.2d at pp. 771-772, explained: "It has been said that it would be extending the hardships of harassed and exasperated parents too far to hold them liable for general incorrigibility, a bad education and upbringing, or the fact that the child turns out to have a nasty disposition."

*Flohr, supra,* 260 Cal.App.2d 281, 291, stated: "[t]he evidence must show that they had a duty as reasonable persons to restrain the child from the use of the implements in question." The uncontroverted facts are that respondent had neither immediate authority over Roy nor knowledge of his propensity for violence. Accordingly, the trial court did not err in finding no legal basis for appellant's claim that respondent negligently controlled and supervised her son. (*Id.,* at p. 291; *Singer* v. *Marx, supra,* 144 Cal.App.2d 637, 646.)

■ Turning to the claim of negligent safeguarding of firearms, in contrast to the example of a father found subject to liability in *Reida,* and the other cases cited by appellant (e.g., *May* v. *Goulding* (1961) 365 Mich. 143 [111 N.W.2d 862]), respondent lacked the opportunity to observe and exercise control over Roy's behavior. And, critically, she had no ability to restrain or prevent her son's access to firearms in his father's house. Hence, as a matter of law she cannot be made legally responsible for Roy's use of a deadly weapon. (*Megeff* v. *Doland, supra,* 123 Cal.App.3d 251, 261; *Weisbart* v. *Flohr, supra,* 260 Cal.App.2d 281, 291.) Since there remains no triable issues of fact as to appellant's negligence cause of action, summary judgment was properly granted. (*Ibid.*)

Appellant also challenges the trial court's dismissal of his statutory claims. Appellant first maintains that respondent is responsible for the conduct of her son pursuant to Civil Code section 1714.1, subdivision (a), which, as pertinent here, declared that "[a]ny act of willful misconduct of a minor which results in injury or death to another person shall be imputed to the parent or guardian having custody or control of the minor for all purposes of civil damages . . . ."[2]

■ Respondent complains of appellant's failure to specifically refer to Civil Code section 1714.1, subdivision (a) in the trial court, although she

---

[2]Civil Code section 1714.1, subdivision (a) was amended in 1983 (Stats. 1983, ch. 981, § 1), and now reads in full: "(a) Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct. [¶] The joint and several liability of the parent or guardian having custody and control of a minor under this subdivision shall not exceed ten thousand dollars ($10,000) for each tort of the minor, and in the case of injury to a person, imputed liability shall be further limited to medical, dental and hospital expenses incurred by the injured person, not to exceed ten thousand dollars ($10,000). The liability imposed by this section is in addition to any liability now imposed by law."

Besides increasing the maximum amount of liability from $5,000 to $10,000, the 1983 amendment to Civil Code section 1714.1, subdivision (a) substituted the phrase "custody *and* control" for "custody *or* control," the latter change in language being particularly significant here. For purposes of this appeal, the pre-1983 version of the statute is acknowledged by the parties to be controlling.

does not expressly contend that appellant is for that reason precluded from relying on that statute to state a cause of action. Apparently, appellant's first amended complaint, which has not been made part of the record on appeal, fails to mention section 1714.1, subdivision (a). The only statutory cause of action stated in appellant's pleading is predicated upon section 1714.3.

In his opposition to the motion for summary judgment, however, appellant specifically refers to section "1714.1 et seq." as a statutory basis for liability. And in oral argument, the parties discuss section 1714.1 along with section 1714.3 in discussing respondent's potential statutory liability.

Thus, respondent had notice in the trial court of appellant's reliance upon Civil Code section 1714.1, subdivision (a). The facts and law pertinent to this issue were presented to the trial court. This being so, no prejudice will inure to respondent from our consideration of appellant's claim that he should be allowed to proceed to trial with a cause of action under section 1714.1, subdivision (a). (*Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal.App.3d 1, 16 [105 Cal.Rptr. 414].)

■■■ Turning to the merits of appellant's contention, the crucial inquiry is whether the phrase "custody or control" in Civil Code section 1714.1, subdivision (a) imputes liability to the parent with mere *legal* custody. It is quite obvious from the record that respondent did not have physical custody of her minor son when he perpetrated the act of willful misconduct which is the basis of this action. She did, however, have legal custody of Roy pursuant to court order. Only if we construe the words "custody or control" to mean mere legal custody can appellant's statutory cause of action stand.

The issue requires construction of the statutory language in accordance with established maxims of interpretation. ■■■ Of course, the paramount goal of statutory interpretation is ascertainment of the legislative intent in order to effectuate the objectives of the law. (*Pennisi* v. *Department of Fish & Game* (1979) 97 Cal.App.3d 268, 272 [158 Cal.Rptr. 683]; *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) The provision must be given "a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers," practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) """The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.""" (*United Business*

*Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263].)

Civil Code Section 1714.1, subdivision (a) imposes vicarious and strict liability upon a parent for acts of the child if the statutory requirements are met. (*Reida* v. *Lund, supra,* 18 Cal.App.3d 698, 705; 59 Ops.Cal.Atty.Gen. 142 (1976).) The obvious purpose of the law is to provide a satisfactory remedy to innocent third parties injured by a minor where, for all practical purposes, none is available under the common law. (Stokes, *Insurance: Liability of Insurer Under Personal Liability Policy for Damage Caused by Wilful Misconduct of Insured's Child—Application of New California Statute* (1955) 7 Hastings L.J. 98, 99-101.) As one commentator has observed: "The rule of public policy would seem to be, and rightly so, that between innocent third parties and parents of a minor child causing damage through wilful misconduct, the latter should bear the burden of responsibility." (*Id.,* at p. 101.)

Thus, the obvious purpose of Civil Code section 1714.1, subdivision (a) is to protect and compensate injured innocent third persons by expanding the common law scope of parental liability for willful acts of misconduct by children.[3] At the same time, the amount of statutory liability is limited.

Under common law, ability to control the minor is a crucial factor in determining negligence liability. (*Costello* v. *Hart, supra,* 23 Cal.App.3d 898, 901.) And in order for the parent to have the requisite "ability to control" (*Poncher* v. *Brackett, supra,* 246 Cal.App.2d 769, 772), a showing of physical custody and opportunity to exercise authority is necessary. (*Megeff* v. *Doland, supra,* 123 Cal.App.3d 251, 261.) If section 1714.1, subdivision (a) seeks to augment the common law—and it can hardly be disputed that it does—then requiring actual *physical* custody of the child by the parent would not in our view adequately further the objective of the statute. A more reasonable interpretation is that the Legislature intended mere legal custody to trigger parental liability for willful acts of a child under Civil Code section 1714.1, subdivision (a). Use of the disjunctive phase "custody *or* control" is consistent with the view that physical control of the child is unnecessary for application of statutory liability. Had the Legislature intended to restrict statutory parental liability for willful acts of a child to parents with actual physical custody, appropriate limiting language could have been employed.[4] Instead, the more inclusive term "custody" was used, along with the broad language "or control," indicating to us a

---

[3]In this regard, see the comment by the Senate Committee on Judiciary which accompanied Senate Bill No. 233, amending section 1714.1, subdivision (a) in 1977, on which we may rely. (*Smith* v. *Rhea* (1977) 72 Cal.App.3d 361, 369 [140 Cal.Rptr. 116].)

[4]As it was in the 1983 amendment to the statute.

legislative intent to make either relationship with the child sufficient to make the parent liable.[5]

 The law recognizes a distinction between legal and physical custody of a child, but both are considered "custody." (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 683 [190 Cal.Rptr. 469].) "Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings (Civ. Code, § 197) and the right to direct his activities and make decisions regarding his care and control, education, health, and religion. [Citations.]" (*Burge v. City & County of San Francisco* (1953) 41 Cal.2d 608, 617 [262 P.2d 6]; *In re Marriage of Neal* (1979) 92 Cal.App.3d 834, 841 [155 Cal.Rptr. 157].) Hence, "custody," whether physical or legal, contemplates parental input into decisions which affect the child. This being so, we do not consider it unfair to impose upon a parent having mere legal custody, such as respondent, statutorily limited liability for willful acts of the child.[6]

Decisions from other jurisdictions interpreting similar statutes have found liability based upon mere legal custody. For instance, in *Flannigan v. Valliant* (La.App. 1981) 400 So.2d 225, a mother and father were sued under a Louisiana statute (LSA—C.C. art. 2318) which made them responsible for acts of their minor "residing with them, or placed by them under the care of other persons . . . ." (*Id.*, at p. 227.) Their son committed a tort while residing with his sister. The father escaped liability by virtue of a divorce decree which awarded custody of the minor to the mother. The court reached "the opposite result with respect to the mother," however, on the sole ground that she had legal custody of the minor son at the time of the alleged battery. (*Ibid.*) The court declared: "The fact that (the child) resided outside of the mother's abode does not relieve her of that liability." (*Ibid.*)

---

[5] Perhaps in recognition of the increased liability imposed by the pre-1983 version of section 1714.1, subdivision (a), the Legislature modified the statute to require a showing of both "custody and control" for application of vicarious liability upon the parent. We are concerned here with only the former, more capacious statutory language, however. As it currently stands, the only apparent distinction between section 1714.1, subdivision (a) and common law negligence liability, is that the former does not require a showing that the parent had knowledge of the child's dangerous tendencies.

[6] And as so interpreted, section 1714.1, subdivision (a) does not impose liability upon a parent with neither legal nor physical custody of the child. We express no opinion on the issue of whether mere *control* of the minor child, absent legal or physical custody, triggers statutory liability for willful acts of misconduct, that issue not being before us in the instant appeal.

Both the language used by the Legislature and the policy underlying the law compel us to construe Civil Code section 1714.1, subdivision (a)—as it read prior to the 1983 amendments—to apply to parents, such as respondent, who are legal custodians of children who perpetrate acts of willful misconduct. Accordingly, the trial court erred by dismissing appellant's statutory cause of action based upon Civil Code section 1714.1, subdivision (a).

Appellant has also sought damages from respondent under authority of Civil Code section 1714.3, which, in pertinent part, provides: "Civil liability for any injury to the person or property of another proximately caused by the discharge of a firearm by a minor under the age of 18 years shall be imputed to a parent or guardian having custody or control of the minor for all purposes of civil damages, . . . if such parent or guardian either permitted the minor to have the firearm or left the firearm in a place accessible to the minor."[7] Repeating his argument that "custody or control" means mere *legal* custody of a minor as exercised by respondent, appellant submits that dismissal of his cause of action based upon Civil Code section 1714.3 was error.

But in contrast to Civil Code section 1714.1, subdivision (a), liability arises under Civil Code section 1714.3 only if "the parent or guardian either permitted the minor to have the firearm or left the firearm in a place accessible to the minor." There is no dispute that the weapon used by Roy to kill Renee Robertson belonged to his father and was obtained by the minor from his father's house. Respondent had no knowledge of the availability of firearms to Roy in the father's home. Thus, she could not have permitted use of the weapon by the minor. And she certainly did not leave the firearm in a place accessible to Roy. We accordingly conclude that as a matter of law appellant cannot state a claim against respondent under Civil Code section 1714.3, and summary judgment in favor of respondent on that cause of action was properly granted.

---

[7] In full, section 1714.3 reads: "Civil liability for any injury to the person or property of another proximately caused by the discharge of a firearm by a minor under the age of 18 years shall be imputed to a parent or guardian having custody or control of the minor for all purposes of civil damages, and such parent or guardian shall be jointly and severally liable with such minor for any damages resulting from such act, if such parent or guardian either permitted the minor to have the firearm or left the firearm in a place accessible to the minor. [¶] The liability imposed by this section is in addition to any liability now imposed by law. However, no person, or group of persons collectively, shall incur liability under this section in any amount exceeding fifteen thousand dollars ($15,000) for injury to or death of one person as a result of any one occurrence or, subject to the limit as to one person, exceeding thirty thousand dollars ($30,000) for injury to or death of all persons as a result of any one such occurrence."

That part of the judgment dismissing appellant's action based upon Civil Code section 1714.1, subdivision (a), is reversed. In all other respects the judgment is affirmed. The parties are to bear their own costs on appeal.

Racanelli, P. J., and Elkington, J., concurred.