Filed 3/9/23  Feldman v. Yapstone CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TODD FELDMAN, | B316156 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 19STCV14523 |
| v. | |
| YAPSTONE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge. Reversed and remanded.

Miller Barondess and James Goldman for Plaintiff and Appellant.

Kabat Chapman & Ozmer, Theresa A. Kristovich and Paul A. Grammatico for Defendant and Respondent.

———————————

# INTRODUCTION

In 2000, Todd Feldman purchased shares of Yapstone, Inc.'s (Yapstone) stock.[1] In 2019, he sued Yapstone for declaratory relief and breach of contract, asserting Yapstone violated his anti-dilution rights as a holder of the company's stock by failing to give him the opportunity to obtain additional shares of stock when, between 2003 and 2015, it issued several million shares to various investors and employees at reduced or no cost. The court granted Yapstone's motion for summary judgment, finding Feldman's claims are time-barred. Because there is a triable issue of fact as to whether the delayed discovery rule tolled the statute of limitations for at least one of the alleged breaches underlying Feldman's breach of contract claim, we reverse the judgment.

# FACTS AND PROCEDURAL BACKGROUND

## 1.     Feldman Invests in Yapstone

Yapstone is an online payment company incorporated in Delaware and headquartered in Walnut Creek, California. Thomas J. Villante is Yapstone's chairman and chief executive officer. Villante and Feldman were childhood friends.

In March 2000, Yapstone filed a certificate of designation authorizing the company to issue 250,000 shares of "Series A Preferred Stock" (March 2000 Certificate of Designation). That certificate sets forth the rights of Series A Preferred stockholders, including the right to convert such stock into Yapstone's Class A Common Stock. Series A Preferred stockholders were also given

---

[1] The company is currently known as Yapstone Holdings, Inc.

2

limited anti-dilution protections, such as the right to convert Series A Preferred Stock into Class A Common Stock at a discounted rate should the company issue Class A Common Stock, or any security convertible into that class of stock, below the stock's conversion price, which at the time was $10 per share. The March 2000 Certificate of Designation states that the rights of Series A Preferred stockholders can be amended with two-thirds of those stockholders' approval.

In April 2000, after consulting with Villante, Feldman purchased 2,500 shares of Yapstone's Series A Preferred Stock. At the time, Feldman's shares accounted for about one percent of all Yapstone's Series A Preferred Stock and about a quarter of one percent of all Yapstone's stock.[2]

Shortly after Feldman purchased his shares of Series A Preferred Stock, Yapstone sent him a copy of his subscription agreement. That agreement includes a provision entitled "Limited Voting Stock; Dilution," which provides: "Investor understands that (1) the Shares [of Series A Preferred Stock] are only entitled to one vote per Share whereas [Yapstone] has issued a significant number of shares of Class B Common Stock entitled to ten votes per share; (2) [Yapstone] is not agreeing to maintain the percentage ownership provided by Investor's purchase of the Shares; (3) [Yapstone] is currently selling and probably will in the future sell more equity and other securities to raise capital and issue such securities for purposes of providing compensation and reimbursement to [Yapstone's] officers and others; and (4)

---

[2] In May 2011, Villante gifted Feldman 1,000 shares of Class A Common Stock.

3

any such issuance of equity securities will reduce Investor's percentage in [Yapstone] accordingly."

**2.      Yapstone Acquires RentPayment.com's Assets**

In September 2002, Yapstone agreed to purchase the assets of a competitor online payment company, RentPayment.com (RentPayment). As part of the deal, RentPayment would receive a 25 percent equity interest in Yapstone. Specifically, Yapstone would issue to RentPayment: (1) 135,431 shares of Yapstone's Class A Common Stock at $0.001 value per share; (2) 420,125 shares of Yapstone's Class B Common Stock at $0.001 value per share; and (3) 134,250 shares of Yapstone's Series A Preferred Stock at no par value per share. As part of the acquisition, RentPayment's president and chief executive officer, Matthew Golis, would become Yapstone's president and chief operating officer, and Golis would "be able to direct the voting and disposition of all [Yapstone's] shares owned by RentPayment."

To facilitate the purchase agreement, Yapstone's creditors, including Villante, agreed to restructure Yapstone's debt. Specifically, Yapstone would issue to Villante 187,950 shares of Series A Preferred Stock and 777,778 shares of Class B Common Stock in consideration of nearly $500,000 of debt that Yapstone owed Villante for unpaid compensation and various advances he made to the company. Additionally, Yapstone agreed to assume $175,000 of debt that RentPayment owed Golis for unpaid compensation.

The same month it agreed to purchase RentPayment's assets, Yapstone sent its stockholders, including Feldman, a document detailing the purchase agreement (Information Sheet). The Information Sheet included the following disclosure: "Upon completion of the Acquisition, [Yapstone's] directors and

4

executive officers and persons or entities affiliated with them will beneficially own in the aggregate approximately 48% of [Yapstone's] outstanding Class A Common Stock, approximately 100% of [the company's] outstanding Class B Common Stock and approximately 66% of [the company's] outstanding Series A Preferred Stock. If these shareholders vote together as a group, they will be able to control [the company's] business and affairs, including the election of individuals to [the company's] board of directors, and to otherwise affect the outcome of certain actions that require shareholder approval, including the adoption of amendments to [the company's] Certificate of Incorporation and certain mergers, sales of assets and other business acquisitions or dispositions."

In early February 2003, Yapstone sent the company's stockholders, including Feldman, a letter addressing what steps the company needed to take to finalize its purchase of RentPayment's assets (RentPayment Purchase Letter). The letter stated that to complete the purchase, Yapstone needed to issue Class A Common Stock and Series A Preferred Stock "for an amount equal to less than $10.00 per share," which would trigger the Series A Preferred stockholders' anti-dilution rights. Yapstone asked its stockholders for assurance that "the issuance of [the] Company's Class A Common Stock and Preferred Stock in connection with the [purchase agreement] will not trigger the Anti-Dilution Right." To that end, Yapstone sought approval from two-thirds of the Series A Preferred stockholders to amend the March 2000 Certificate of Designation to exempt any shares issued as part of the RentPayment purchase agreement from the anti-dilution rights of Series A Preferred stockholders. Yapstone assured its stockholders that "the waiver of the Anti-Dilution

5

Right to be effected by the enclosed Certificate of Amendment is a waiver *only* with respect to the issuances of Class A Common Stock and Preferred Stock made in connection with the [RentPayment purchase agreement]. The Anti-Dilution Right will continue in effect for all subsequent dilutive issuances of the Company's securities."

Feldman, along with numerous other Series A Preferred stockholders, executed written consents waiving their anti-dilution rights as they applied to Yapstone's purchase agreement with RentPayment (Purchase Agreement Waiver). In 2003, after finalizing its purchase of RentPayment's assets, Yapstone filed with the Delaware Secretary of State an amended certificate of designation (2003 Amended Certificate of Designation), adding the shares issued to RentPayment as part of the purchase agreement to Yapstone's definition of "Excluded Stock"—i.e., stock not subject to Series A Preferred stockholders' anti-dilution rights.

### 3.    Feldman Investigates Yapstone's Stock

In 2017, after experiencing health problems, Feldman began planning his estate. Feldman contacted Villante for information about the value of Yapstone's stock and how to transfer the stock Feldman owned to a family trust. According to Feldman, Villante and Yapstone were reluctant to provide him information about his stock and the company's finances. Yapstone eventually provided Feldman and his lawyers information about at least 12 transactions that occurred between 2003—when the company acquired RentPayment's assets—and 2015, during which Yapstone issued several million shares of Class A Common Stock and other types of stock to various investors and employees. According to Feldman, several of those

transactions, especially those occurring between 2003 and 2011, involved the issuance of Yapstone stock at reduced or no cost.

When Feldman questioned whether any of the 12 transactions triggered his anti-dilution rights as a Series A Preferred stockholder, Yapstone initially denied he had any anti-dilution rights. Later, the company claimed that none of the company's issuances of stock triggered Feldman's anti-dilution rights.

### 4.    Feldman's Lawsuit

In April 2019, Feldman sued Yapstone for declaratory relief and breach of contract. The gravamen of Feldman's claims is that Yapstone deprived him of opportunities to exercise his anti-dilution rights as a holder of the company's Series A Preferred Stock when the company issued millions of shares of its stock to various investors and employees at less than fair value.

Feldman alleged that after he purchased 2,500 shares of Yapstone's Series A Preferred Stock, the company issued nearly 4 million additional shares of Class A Common Stock, "some of [which] was issued on a pro-rata basis to Class A Common Stockholders." Specifically, on 12 occasions between September 2003 and September 2015, Yapstone authorized the issuance of additional shares of Class A Common Stock, but the company never gave Feldman the opportunity to purchase additional shares of such stock, "despite the rights granted to him as a Series A Preferred Stockholder." For instance, on March 31, 2005, Yapstone authorized the issuance of more than 1 million shares of Class A Common Stock without offering Feldman the opportunity "to participate in any offering of additional shares."

According to Feldman, many of the shares issued in the transactions occurring between 2002 and 2011 "were obtained by

7

founders and family members and close associates of founders who received them in exchange for far less than fair value, if anything." Those stockholders then used their shares "to purportedly, but invalidly and without proper corporate action, remove Feldman's rights as a Series A Preferred Stockholder to acquire additional shares of Class A Common Stock" and to "expand the list of exceptions as to when [Feldman's] anti-dilution rights … would apply, so as to enable them to proceed with the transactions identified and dilute Feldman."

Feldman also alleged that Yapstone's 2003 acquisition of RentPayment's assets was fraudulent. According to Feldman, the consideration Yapstone received for the shares that the company issued to Villante, Golis, and their "cronies" during that transaction was "substantially less" than the value of the issued shares. In Feldman's view, Villante used the acquisition of RentPayment "to fraudulently increase his and his trusted associates' share of Yapstone," such that they owned "more than 66% of the outstanding shares of Series A Preferred Stock," which "allowed them together to approve any amendment to the Certificate of Incorporation and any issuance of additional securities ranking prior to or on parity with Series A Preferred Stock."

In April 2021, Yapstone moved for summary judgment.[3] Yapstone argued Feldman's claims lack merit and, in any event, are barred by the four-year statute of limitations applicable to breach of contract claims. To the extent Feldman's claims arise out of Yapstone's 2003 acquisition of RentPayment's assets,

---

[3] Yapstone filed its first motion for summary judgment in March 2020, but it later withdrew that motion.

Yapstone argued they are time-barred because that transaction occurred more than a decade before Feldman sued Yapstone. According to Yapstone, the delayed discovery rule didn't toll the statute of limitations for Feldman's claims. As for any of the Class A Common Stock offerings that occurred less than four years before Feldman sued Yapstone, Feldman did not allege how any of those transactions triggered his anti-dilution rights.

In support of its summary judgment motion, Yapstone submitted a declaration executed by David Durant, the company's secretary. Durant has worked for Yapstone since June 2015. He is the company's custodian of records.

Durant testified that none of Yapstone's stock offerings identified in Feldman's complaint involved the issuance of Class A Common Stock, or securities convertible into Class A Common Stock, that would have triggered Feldman's anti-dilution rights. As for Yapstone's issuances of Class A Common Stock between 2013 and 2015, Durant testified that each transaction was a board-approved grant of stocks to employees as part of the employees' equity plans, which fall within the company's pool of "Excluded Stock." According to Feldman, all the other transactions identified in Feldman's complaint involved issuances of classes of stock that did not trigger Series A Preferred stockholders' anti-dilution rights.

Yapstone also submitted Feldman's responses to requests for admissions and special interrogatories; excerpts from Feldman's deposition; and a request for judicial notice of several of Yapstone's corporate documents. In his responses to Yapstone's request for admissions, Feldman admitted he received the Information Sheet and the RentPayment Purchase Letter addressing the purchase agreement between Yapstone and

RentPayment. During his deposition, Feldman admitted he signed the Purchase Agreement Waiver, agreeing to waive his anti-dilution rights as they applied to Yapstone's acquisition of RentPayment's assets. And, in his response to Yapstone's special interrogatories, Feldman admitted he was not aware of "any conversion event" that may have triggered his anti-dilution rights as a Series A Preferred stockholder.

Feldman opposed the summary judgment motion. He argued his declaratory relief claim isn't time-barred because Yapstone didn't assert he lacked anti-dilution rights until after he contacted the company in 2017, less than four years before he filed his lawsuit. As for his breach of contract claim, Feldman argued it is not time-barred because the delayed discovery rule applies to all of Yapstone's dilutive transactions that occurred more than four years before he sued the company. In any event, summary judgment would not be appropriate, Feldman asserted, because two of the company's dilutive transactions occurred in May and September 2015, less than four years before Feldman filed his complaint. Feldman also argued Yapstone failed to establish there are no triable issues of material fact concerning his breach of contract claim.

Feldman objected to parts of Durant's declaration and Yapstone's request for judicial notice.

Following a hearing in February 2021, the court granted Yapstone's summary judgment motion. The court explained its ruling as follows: "I agree with [Yapstone's] analysis regarding that the statute of limitations has expired, that everything was pretty transparent with regard to what was happening with the stocks. And, therefore, if there was going to be any type of issue in claim it should have been brought a lot sooner than when this

case was filed. [¶] I did not see any hard evidence that [Feldman] produced in responding to [Yapstone's] statement of undisputed facts. In fact[,] he basically agreed with everything almost, but even the ones that claimed there was a dispute there was no evidence submitted just argument. [¶] As relation to the claim for promissory estoppel that is not in this lawsuit, and you can't start adding claims and theories outside of the pleadings to defeat the motion that is on calendar for the lawsuit that is being addressed."

In September 2021, the court entered judgment in Yapstone's favor. Feldman appeals.

## DISCUSSION

### 1. Principles of Summary Judgment and Standard of Review

A court may grant summary judgment where no triable issues of material facts exist as to all the plaintiff's causes of action and the moving party is entitled to judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 (*Merrill*).) If the defendant fails to negate all the plaintiff's claims, summary judgment should be denied. (*Robertson v. Wentz* (1986) 187 Cal.App.3d 1281, 1287 (*Robertson*).)

A defendant moving for summary judgment must show that one or more elements of the plaintiff's claims cannot be established or that there exists a complete defense to the claims. (Code Civ. Proc., § 437c, subd. (p)(2).) To meet this burden, the defendant must support its motion with "evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826,

11

855 (*Aguilar*), quoting Code Civ. Proc., § 437c, subd. (b).) "The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that the plaintiff has discovered nothing." (*Aguilar*, at p. 855.) The defendant may not, however, "simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 854, fn. omitted.) If the defendant does not present sufficient evidence to meet its initial burden, the burden of production never shifts to the plaintiff. (*Id.* at p. 850.) Instead, the court must deny summary judgment. (*Ibid.*)

If the defendant meets its initial burden, the burden shifts to the plaintiff to present evidence establishing a triable issue of material fact. (*Merrill*, *supra*, 26 Cal.4th at p. 476.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find in favor of the party opposing summary judgment. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) If the plaintiff meets his burden, the court should deny summary judgment. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889.)

We independently review a ruling on a motion for summary judgment. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We liberally construe the evidence in favor of the opposing party and resolve all doubts about the evidence in that party's favor. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) We consider all evidence the parties submit in connection with the motion, except that which the court properly excluded. (*Merrill*, *supra*, 26 Cal.4th at p. 476.)

**2.    A triable issue exists as to whether the delayed discovery rule tolls the statute of limitations for Feldman's breach of contract claim.**

The court granted Yapstone's summary judgment motion on statute of limitations grounds, finding all of Feldman's claims are time-barred. As we explain, the court erred in granting summary judgment because there is a triable issue as to whether the delayed discovery rule tolled the statute of limitations for at least one of the transactions underlying Feldman's breach of contract claim.

The statute of limitations for breach of contract is four years. (Code Civ. Proc., § 337, subd. (a).) Generally, the limitations period begins to run "upon the occurrence of the last element to the cause of action." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187.)

Feldman filed his complaint on April 26, 2019. It is undisputed that, on its face, Feldman's breach of contract claim is time-barred as to Yapstone's alleged dilutive transactions occurring between March 2003 and February 2015, since those transactions were completed more than four years before Feldman filed his complaint.

Under the delayed discovery rule, however, the accrual of a breach of contract cause of action may be tolled until the plaintiff discovers, or has reason to discover, the cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*); see *Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App.4th 1, 5 (*Gryczman*) [delayed discovery rule applies to breach of contract causes of action where the harm is difficult to detect, and the defendant is in a superior position to comprehend the breach and the harm].) "A plaintiff has reason to discover a cause of action

13

when he or she 'has reason at least to suspect a factual basis for its elements.' " (*Fox*, at p. 807.) Put another way, the delayed "discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." (*Ibid*.)

To rely on the delayed discovery rule, a plaintiff must show " '(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox*, *supra*, 35 Cal.4th at p. 808.) Whether the delayed discovery rule applies is generally a question of fact. (*Gryczman*, *supra*, 107 Cal.App.4th at pp. 6–7; *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320 [" 'belated discovery is a question of fact' "].) The issue may be resolved as a matter of law only if " 'reasonable minds can draw only one conclusion from the evidence.' " (*E-Fab*, at p. 1320.)

Where the plaintiff opposes summary judgment and it is undisputed that the plaintiff's claims are facially time-barred, "the plaintiff has the burden 'to show that a triable issue of one or more material facts exists as to' " the application of the delayed discovery rule. (*Gryczman*, *supra*, 107 Cal.App.4th at pp. 6–7.) Specifically, the plaintiff must present evidence showing a triable issue exists as to whether he "exercised due diligence in discovering the breach." (*Id*. at p. 7.)

Feldman alleged Yapstone engaged in a series of dilutive transactions between 2003 and 2011, including on March 31, 2005,[4] during which Yapstone authorized the issuance of millions

---

[4] Durant testified that this transaction was completed in April 2005, when Yapstone acquired "eRentPayer, Inc.," a competitor online payment company. For brevity's sake we hereafter refer to this transaction as the "April 2005 Transaction."

of shares of Series A Preferred Stock or Series A Common Stock at reduced or no cost. Feldman produced the following evidence to show he did not have reason to timely discover any of those transactions.

Feldman states in his declaration that after he received the RentPayment Purchase Letter and consented to waiving his anti-dilution rights with respect to Yapstone's acquisition of RentPayment's assets, he believed those rights would apply to all of Yapstone's future issuances of Class A Common Stock. Specifically, Feldman relied on Yapstone's statement in the purchase letter that his waiver applied "only" to the company's purchase of RentPayment's assets, and that his anti-dilution rights would "continue in effect for all subsequent dilutive issuances of the Company's securities." According to Feldman, after he signed the Purchase Agreement Waiver, he was never offered any opportunities to acquire additional shares of Yapstone stock, nor did he have any reason to be aware that "Yapstone had issued or sold any Series A Preferred Stock or Class A Common Stock at less than $10 per share"—i.e., at a value that would trigger his anti-dilution rights as a Series A Preferred stockholder. Thus, he did not discover any of Yapstone's issuances of Series A Preferred Stock and Class A Common Stock that occurred after he signed the Purchase Agreement Waiver, including the April 2005 Transaction, until he began investigating Yapstone's stocks in 2017 in connection with his estate plan.

Feldman's evidence is sufficient to raise a triable issue as to whether he had reason to discover the April 2005 Transaction in a timely manner. That is, Feldman's evidence shows the time and manner of his discovery—i.e., after he began investigating

15

Yapstone's stocks in 2017. (See *Fox*, *supra*, 35 Cal.4th at p. 808.) Additionally, a reasonable trier of fact could find Feldman was unable to discover, or had no reason to inquire about, the April 2005 Transaction based on Yapstone's assurances in the RentPayment Purchase Letter that his anti-dilution rights would apply to any future dilutive issuances of the company's securities and his testimony that Yapstone never notified him about that transaction.

Yapstone contends the delayed discovery rule should not apply in this case because none of the company's allegedly dilutive transactions were performed in secret. (See *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222 (*NBCUniversal*) [the delayed discovery rule " 'may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time' "].) According to Yapstone, Feldman was put on notice of all the company's allegedly dilutive transactions through records publicly recorded with the Delaware Secretary of State. This argument lacks merit.

The publicly recorded documents Yapstone relied on to support this argument consist of: (1) a "Certificate of Amendment of Certificate of Incorporation of Yapstone, Inc." signed on September 5, 2002 and recorded on March 28, 2003; (2) a "Certificate of Amendment of Certificate of Designation of Series A Preferred Stock of Yapstone, Inc." signed on September 5, 2002 and recorded on March 28, 2003; and (3) a "Certificate of Amendment of Certificate of Designation of Series A Preferred Stock of Yapstone, Inc." signed on February 5, 2003 and recorded on May 27, 2003. All these documents pertain to Yapstone's

purchase of RentPayment's assets, as to which Feldman expressly agreed to waive his anti-dilution rights. These documents don't mention any subsequent issuance of Yapstone stock—including the April 2005 Transaction—and they were all signed and recorded in 2002 or 2003. Needless to say, these documents would not have put Feldman on inquiry notice of the April 2005 Transaction.

Nor does Durant's testimony or the exhibits attached to his declaration establish Feldman should have had reason to discover the April 2005 Transaction within four years of its completion. Durant testified that the Class A Common Stock issued during the April 2005 Transaction was added to the "Series A definition of 'Excluded Stock' "—i.e., stock not subject to the anti-dilution rights conferred by Series A Preferred Stock—following a two-thirds vote of the Series A Preferred stockholders. According to Durant, "[t]hose definitions of 'Excluded Stock' are reflected" in a document entitled "Amended and Restated Certificate of Designation of Series A Preferred Stock of Yapstone, Inc.," which is attached to his declaration as Exhibit 32. That document was signed by Golis on May 27, 2011 and recorded with the Delaware Secretary of State on that same date. Contrary to Durant's testimony, however, the amended certificate of designation at Exhibit 32, and specifically the paragraph in that document defining "Excluded Stock," does not mention the April 2005 Transaction. Thus, that document would not have put Feldman on notice of the April 2005 Transaction. Yapstone points to no other evidence that shows the details of that transaction were disclosed to Feldman or otherwise publicly disclosed before Feldman began investigating Yapstone's stocks in 2017.

17

In short, Feldman created a triable issue concerning whether he exercised reasonable diligence in discovering the April 2005 Transaction. The court, therefore, shouldn't have found Feldman's breach of contract claim, as it arises out of that transaction, is time-barred as a matter of law. (*Gryczman*, *supra*, 107 Cal.App.4th at p. 7.)

Finally, we reject Yapstone's argument that even if Feldman's breach of contract claim isn't time-barred, it met its initial burden to produce evidence negating all the elements of that claim. Feldman alleged Yapstone engaged in dilutive transactions—i.e., issued shares of Class A Common Stock or Series A Preferred Stock at less than $10 per share—on several occasions between 2003 and 2011, including during the April 2005 Transaction. According to Feldman, Yapstone violated his anti-dilution rights because the company never notified him of the dilutive transactions or otherwise offered him the opportunity to exercise his anti-dilution rights—i.e., convert his Series A Preferred Stock into Class A Common Stock at a discounted conversion price. Thus, as the moving party, Yapstone had the burden to produce evidence negating all the elements of Feldman's breach of contract claim as it related to those transactions. (*Aguilar*, *supra*, 25 Cal.4th at p. 855.)

As we just explained, Exhibit 32 attached to Durant's declaration does not reflect that the shares of Yapstone Class A Common Stock issued as part of the April 2005 Transaction were added to the company's definition of "Excluded Stock" by a two-thirds vote of Series A Preferred stockholders—i.e., exempted from Feldman's anti-dilution rights. Nor does Durant otherwise claim that the April 2005 transaction did not involve the issuance of Class A Common Stock, or any security convertible into that

18

class of stock, at a value of less than $10 per share. Yapstone points to no other evidence that would establish the shares issued during the April 2005 transaction were properly added to the company's definition of "Excluded Stock." Consequently, Yapstone has not met its burden to show the April 2005 Transaction did not violate Feldman's anti-dilution rights.

In sum, because there are triable issues of material fact concerning at least one of Feldman's claims, the court should have denied summary judgment. (*Aguilar*, *supra*, 25 Cal.4th at p. 855; *Robertson*, *supra*, 187 Cal.App.3d at p. 1287 [moving defendant must make a factual showing negating all causes of action before the court may grant summary judgment].)[5]

---

[5] In light of our conclusion, we need not address the other arguments raised by Feldman.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with the views expressed in this opinion. Appellant Todd Feldman shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

BENKE, J.*

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.