[No. B220081. Second Dist., Div. One. Oct. 3, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
RUFINO ACEVEDO et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part B.3., 4. of the Discussion.

## Counsel

Charles B. Holzhauer, under appointment by the Court of Appeal, for Defendant and Appellant Rufino Acevedo.

Law Offices of Richard G. Novak, Richard G. Novak and Iris Roe Lee for Defendant and Appellant Steven Montes.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Augustin Alvarez.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant Omar Cruz.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, James William Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CHANEY, J.**—The appellants were arrested on charges arising from seizures of over 350 kilograms of cocaine, 50 pounds of methamphetamine, 650 pounds of marijuana, firearms, and more than $1.2 million in illegal proceeds,

resulting from investigations involving court-authorized wiretaps. After being convicted on drug trafficking charges, they challenge the trial court's refusal to compel discovery of redacted and sealed portions of the documentation supporting the wiretap authorization orders, and its refusal to suppress the resulting wiretap and other evidence that led to their arrest. These rulings, they contend, violated their rights under state and federal law. We will affirm.

## STATEMENT OF THE CASE

A 14-count information, filed October 31, 2008, charged appellants Rufino Acevedo, Steven Montes, Augustin Alvarez and Omar Cruz (and one other person not a party to this appeal) with some or all of the following crimes: conspiracy to commit possession and transportation of cocaine for sale (Pen. Code, § 182, subd. (a)(1));[1] Health & Saf. Code, §§ 11351, 11352); possession for sale, and transportation, of a controlled substance (cocaine) (Health & Saf. Code, §§ 11351, 11352, subd. (a)); possession of money or instruments over $100,000 from sales of cocaine (Health & Saf. Code, § 11370.6, subd. (a)); and false compartment activity (Health & Saf. Code, § 11366.8, subd. (a)).[2] The information also alleged weight enhancements with respect to the controlled substances, ranging from one to 80 kilograms. (Health & Saf. Code, § 11370.4, subd. (a)(1), (6).)

Appellants pleaded not guilty and denied the allegations. After their motions for discovery of wiretap documentation and to suppress wiretap evidence were denied, they pleaded no contest and were convicted.

Appellants' contentions in this appeal arise from the trial court's denial of their motions for discovery of unredacted documents supporting the wiretaps that led to their arrests, and for suppression of the evidence resulting from the wiretaps.

*The Wiretap Orders*

Between November 3, 2005, and April 2006, law enforcement agencies obtained orders signed by Judges Larry P. Fidler and Curtis B. Rappé of the Los Angeles Superior Court (joined in one instance by a judge of the Riverside Superior Court) authorizing seven wiretaps involving 14 cell phones allegedly used by Montes. The orders included the magistrates' findings of probable cause to believe that defendant Montes and others "have

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] Health and Safety Code section 11366.8, subdivision (a), provides for punishment of persons who possess, use, or control a "false compartment" with the intent to "store, conceal, smuggle, or transport" a controlled substance.

committed, are committing and are about to commit" specified drug trafficking offenses, that communications concerning the crimes would be obtained by requested wiretap interceptions, and that "[n]ormal investigative procedures have been tried and have failed and appear to be unlikely to succeed if tried and/or are too dangerous." (See § 629.52.) Each of the orders also provided that the order, the application supporting it, and the intercepted communications would be sealed pursuant to the official information privileges and procedures of Evidence Code sections 1040 through 1042, and the decision in *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246] (*Hobbs*).[3]

The information obtained as a result of the wiretaps led to the arrest of Montes and each of the other appellants, for their participation in a drug trafficking operation headed by Montes, involving the transportation of large amounts of cocaine from Mexico to Southern California and other locations around the country.

*Discovery and Disclosure of Redacted Wiretap Authorization Documentation*

Following the filing of the complaint in May 2006, appellants' counsel were provided with copies of the wiretaps' supporting affidavits and investigative reports; however, those documents were redacted, heavily in some places, in order to conceal portions that the law enforcement agencies believed would reveal privileged official information or compromise the identity of confidential informants. The documentation that was provided to defendants consisted of a list of 40 overt acts supporting the felony complaint's conspiracy charges, the affidavits of Special Agents Salaiz and Wilde of the California Department of Justice Bureau of Narcotic Enforcement supporting the wiretap requests, as well as six-day reports and investigative reports from the wiretaps, and letters setting forth the prosecution's refusal to provide unredacted copies of further supporting documentation.

According to these documents, the information obtained from the wiretaps and from other methods of investigation between November 2005 and April 2006 led to seizures of 353 kilograms of cocaine, 50 pounds of methamphetamine, 659 pounds of marijuana, five firearms, and more than $1.2 million from illegal drug transactions. Montes and the other appellants were arrested at various locations, including Chicago, Illinois and California.

---

[3] The *Hobbs* decision held that statutory requirements of disclosure of search warrant documentation are subject to an exception permitting supporting affidavits to be sealed when necessary to protect a confidential informant's identity. (*Hobbs, supra,* 7 Cal.4th at pp. 963, 970–971.) *Hobbs* approved procedures for in camera review of the sealed materials without disclosure to defendants or their counsel, in order to determine the propriety of the government's nondisclosure, and to safeguard the defendants' rights while protecting the government's legitimate interests in the information's confidentiality. (*Id.* at pp. 966, 970–972.)

On September 1, 2006, Montes, joined by the other defendants, moved in the trial court for discovery of the unredacted wiretap documentation.[4] Their motion sought disclosure of the documentation in two categories: the unredacted affidavits supporting the applications for wiretap authorization orders, and the unredacted transcripts and investigative reports prepared during and after the intercepts, including the text of all intercepted statements made by Montes. The motion argued that the refusal to produce unredacted copies of the investigative reports and affidavits was inconsistent with the prosecution's discovery obligations, and that the redactions deprived defendants of their constitutional and statutory rights to challenge the wiretaps. The initial motion focused solely on the right to discovery as a basis for litigating the wiretaps' necessity, expressly disclaiming any intention to seek disclosure of the identity of any confidential informant or to challenge the existence of probable cause for the wiretaps.

The prosecution opposed the discovery motion, invoking the privileges of Evidence Code sections 1040 and 1041, the exemptions from discovery set forth in Penal Code sections 1054.6 and 1054.7, and the provisions of Evidence Code section 1042 and the procedures approved in *Hobbs* for in camera determination of the validity of the privilege claims. (Evid. Code, § 1042, subd. (d).) Appellants argued in reply that the *Hobbs* procedures apply only to search warrant affidavits, not wiretap authorization affidavits, and that the statutory privileges cannot overcome the defendant's right to mount a meaningful challenge to the sufficiency of the wiretaps' supporting evidence.

*Order for Partial Disclosure of Redacted Documentation*

On October 13, and November 8, 2006, the trial court held hearings in camera, out of the presence of appellants and their attorneys, under the authority of Evidence Code section 1042, subdivision (d), and *Hobbs*, ordering the transcripts of those hearings sealed. At a November 16, 2006 hearing, with all parties present, the trial court confirmed its earlier rulings that the *Hobbs* procedures would be applied to hear and determine the issues raised by defendants' discovery motion (as well as an anticipated future motion to suppress the wiretap evidence). With respect to the redactions, the court denied the motion to require unredacted production of all the documentation. However, it also ruled on the basis of its in camera review of the unredacted documents that certain of the redactions were not justified, and that those portions of the unredacted documents must be produced to

---

[4] Unless otherwise indicated, all the appellants joined in the motions and briefs filed on Montes's behalf, both in the trial court and in this court.

appellants' counsel.[5] Defendants later received the additional unredacted portions of the record that had been ordered disclosed.

*Motion to Suppress Wiretap Evidence*

On February 25, 2008, appellants moved in the trial court to suppress all evidence derived from the wiretaps, on grounds that the supporting affidavits were insufficient to establish the required elements of probable cause and the necessity for the wiretaps. The trial court then held another in camera hearing, again reviewing the unredacted and sealed wiretap documentation in the presence of the prosecution and the affiants, but outside of the presence of defendants and their counsel.[6]

On October 14, 2008, after having reviewed the unredacted affidavits in camera, the court ruled that the documentation sufficiently supported each of the wiretaps and denied the motion for suppression of the wiretap evidence. Specifically, it found that the facts set forth in the wiretap applications were sufficient to support the issuing magistrates' determinations that probable cause existed to justify the wiretaps' issuance, and that they had acted within their discretion in ruling that necessity for the wiretaps was shown by evidence that other investigative procedures had been tried and had failed, or reasonably appeared to be either too dangerous or unlikely to succeed.[7]

*The Preliminary Hearing*

Special Agent Salaiz testified at the ensuing preliminary hearing, setting forth his experience as a special agent of the California Department of Justice,

---

[5] After obtaining a continuance from the trial court, appellants prosecuted unsuccessful challenges to the court's denial of their disclosure motion, seeking writ relief in this court (*Montes v. Superior Court* (Feb. 7, 2007, B196108) (petn. den.), review by our Supreme Court (*Montes v. Superior Court* (Apr. 18, 2007, S150399) (petn. den.)), and certiorari from the United States Supreme Court (No. 07-66).

[6] The People unsuccessfully challenged the standing of defendants other than Montes to attack the wiretaps' validity, arguing that because Montes was the only defendant who acknowledged ownership of the target telephones or participation in intercepted communications, the others could not claim any reasonable expectation of privacy with respect to the intercepted communications. Respondent has not raised the standing issue in this court. We note, however, that section 629.72 provides that a motion to suppress wiretap evidence "shall be made, determined, and be subject to review in accordance with the procedures set forth in Section 1538.5," and subdivision (m) of section 1538.5 provides for challenges to a search or seizure when the moving party "is a defendant in a criminal case and the property or thing has been offered or will be offered as evidence against him or her." (§ 1538.5, subd. (m); see *People v. Davis* (2008) 168 Cal.App.4th 617, 629 [86 Cal.Rptr.3d 55]; see also *People v. Jackson* (2005) 129 Cal.App.4th 129, 146, fn. 19 [28 Cal.Rptr.3d 136].)

[7] The court also denied a related challenge to a search warrant executed at the home of defendant Alvarez in Chicago, which apparently had been obtained using the results of the wiretap investigations.

Bureau of Narcotic Enforcement, his identification of defendants, his participation with another specified special agent in obtaining the wiretap orders used in this case, and his monitoring of targeted telephone communications. Special Agent Salaiz and other law enforcement officers testified that wiretap interceptions of communications to and from the telephones targeted by the wiretap orders in this case led to seizure of substantial quantities of money and cocaine.

In response to cross-examination about the facts in the supporting affidavits, Special Agent Salaiz invoked the privileges of Evidence Code sections 1040 and 1041, declining to testify about when he had personally spoken with Montes, whether he had found evidence of methamphetamine production or distribution by Montes, and whether a particular conversation he was alleged to have had with Montes had been recorded.[8]

*The Judgments*

After the trial court's refusal to unseal the record of the court's in camera hearings, and its denial of their motions to suppress the evidence derived from the wiretaps, the defendants withdrew their pleas of not guilty, entered negotiated no contest pleas to various of the charges, and were each convicted and sentenced for the crimes to which they had pleaded. These appeals followed.[9]

## DISCUSSION

Appellants argue that the procedures of Evidence Code section 1042 and the *Hobbs* decision apply only to search warrants, and that no California court has approved their application to wiretap authorizations. These procedures cannot be used as they were in this case, appellants contend, to evaluate the sufficiency of the grounds for authorizing the wiretaps, and even if these procedures apply to wiretaps, the wiretaps' unredacted supporting documentation and the content of the intercepted communications should have been disclosed. Because it was not, the evidence derived from the wiretaps should have been suppressed. We conclude below that in evaluating the wiretap

---

[8] Contending that a yes-or-no response to this final question could not possibly reveal or compromise a confidential informant's identity, Montes's counsel argued that no privilege could legitimately be claimed with respect to it. The court responded by recessing the hearing for a further in camera examination of Agent Salaiz out of the presence of defendants and their counsel. Following that hearing, the court informed the parties that the conversation had been recorded, but that the privilege would preclude any further questions on that subject. The court then again denied the request for disclosure of all of Montes's intercepted statements, declining to state its reasons further in open court.

[9] On April 2, 2010, Division Eight of this court relieved appellants Alvarez and Cruz of defaults, directing that their appeals be accepted as timely filed.

authorizations the trial court correctly applied the procedures outlined in *Hobbs*, and that the record supports its refusal to require disclosure of the sealed wiretap documentation or to suppress the wiretap evidence.

■ " 'California law prohibits wiretapping,' " except as provided by statute. (*People v. Leon* (2007) 40 Cal.4th 376, 383 [53 Cal.Rptr.3d 524, 150 P.3d 207].) Because "[t]he federal wiretap act establishes minimum standards for the admissibility of evidence procured through electronic surveillance," and "[s]tate law cannot be less protective of privacy than the federal wiretap act," California courts "may look for guidance to cases under title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 United States Code sections 2510 to 2520 (federal wiretap act), 'which "provides a 'comprehensive scheme for the regulation of wiretapping and electronic surveillance.' " ' " (*People v. Roberts* (2010) 184 Cal.App.4th 1149, 1166–1167 [109 Cal.Rptr.3d 736]; see *People v. Leon, supra*, 40 Cal.4th at p. 384; *People v. Jackson, supra*, 129 Cal.App.4th at pp. 146–147.) In applying the California wiretap statute we therefore look to both federal and California law. (*People v. Jackson, supra*, 129 Cal.App.4th at pp. 146–147; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1196, 1204–1207 [105 Cal.Rptr.2d 187].)

■ A wiretap may be ordered based upon affidavits that establish certain factual elements. These include (so far as is relevant here) probable cause to believe that an individual is committing one of a number of specified crimes (among them the drug-trafficking crimes charged in this case), and that communications concerning the crimes will be obtained by the wiretaps, and a "necessity" element consisting of cause to believe that "[n]ormal investigative procedures have been tried and have failed or reasonably appear either to be unlikely to succeed if tried or to be too dangerous." (§ 629.52.)

A trial court's determination that the documentation supporting the wiretap authorization application satisfies these requirements is entitled to substantial deference and is reviewed for abuse of discretion. (*People v. Zepeda, supra*, 87 Cal.App.4th at p. 1204.) We defer to the trial court's express and implied factual findings that are supported by substantial evidence. (*People v. Roberts, supra*, 184 Cal.App.4th at p. 1171; *People v. Reyes* (2009) 172 Cal.App.4th 671, 683 [91 Cal.Rptr.3d 415].)

A. *Appealability*

■ Section 1237.5 provides that "[n]o appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . ." unless the defendant has sought and obtained a certificate of probable cause for the appeal. Notwithstanding that broad language, however,

search and seizure issues for which an appeal is provided under section 1538.5, subdivision (m), may be raised on appeal following a nolo contendere plea, without a probable cause certificate. (*People v. Panizzon* (1996) 13 Cal.4th 68, 74 [51 Cal.Rptr.2d 851, 913 P.2d 1061].) A defendant may "seek further review of the validity of a search or seizure on appeal" following a conviction based on a no contest plea, if "at some stage of the proceedings prior to conviction he or she has moved for . . . the suppression of the evidence." (§ 1538.5, subd. (m); see *Hobbs, supra*, 7 Cal 4th at pp. 955–956; see also Cal. Rules of Court, rule 8.304(b)(4)(A).) These conditions are met with respect to appellants in this case.[10]

### B. The Trial Court Did Not Err by Denying Discovery of the Unredacted Supporting Affidavits and Refusing to Suppress the Wiretap Evidence.

In *Hobbs, supra*, 7 Cal.4th 948, our Supreme Court determined that when necessary to protect a confidential informant's identity, major portions (or even all) of a search warrant's supporting affidavit may validly be sealed and withheld from disclosure to the defendant. And it outlined and approved the procedures to be employed by courts when balancing the need for nondisclosure with the defendant's right to challenge the warrant's evidentiary sufficiency. (*Id.* at pp. 963–964.)

### 1. The trial court properly ruled that the privileges and procedures of Evidence Code sections 1040 through 1042 apply to wiretap authorization affidavits.

Section 629.70 provides that when a defendant has been identified as a result of a wiretap interception obtained under section 629.50 et seq., "the prosecution shall provide to the defendant a copy of all recorded interceptions from which evidence against the defendant was derived, including a copy of the court order, accompanying application, and monitoring logs." (§ 629.70, subd. (b).) This requirement parallels the statutory mandate to disclose the statements of all defendants. (§ 1054.1; *People v. Jackson, supra*, 129 Cal.App.4th at p. 170.)

Under both federal and state law, however, these disclosures are not mandatory in all circumstances. Subdivision (d) of section 629.70 expressly authorizes the court to limit these disclosures "upon a showing of good cause." And section 1054.7 provides that the court may deny discovery for

---

[10] For this reason we do not consider whether the term of defendant Montes's plea agreement expressly preserving his right to appeal from the court's pretrial rulings, including "all the issues, discovery issues and wiretap issues, which include fourth amendment rights," would otherwise be sufficient to confer standing to any of the defendants in this court.

"good cause," including possible danger to a witness or compromise to other investigations. Federal law also recognizes a privilege requiring nondisclosure of " 'the identity of persons supplying the government with information concerning the commission of crimes,' " unless the confidential informant is also a material witness on the issue of the defendant's guilt or innocence. (*McCray v. Illinois* (1967) 386 U.S. 300, 308–309 [18 L.Ed.2d 62, 87 S.Ct. 1056], italics omitted, quoted in *Hobbs, supra,* 7 Cal.4th at p. 958; see *Roviaro v. United States* (1957) 353 U.S. 53, 61 [1 L.Ed.2d 639, 77 S.Ct. 623].)

■ Evidence Code sections 1040 and 1041 codify the privileges to refuse disclosure of confidential official information and the identity of confidential informants, and Evidence Code section 1042 provides the procedures used to determine whether these privileges may be invoked to prevent disclosures in any particular case. Evidence Code section 1040 provides governmental entities with a privilege to refuse to disclose confidential official information when the public interest in preserving the confidentiality of the information "outweighs the necessity for disclosure in the interest of justice." (Evid. Code, § 1040, subd. (b)(2).) And Evidence Code section 1041 provides that a public entity is privileged "to refuse to disclose the identity of a person who has furnished information [in confidence concerning a violation of law] . . . if . . . [¶] . . . [¶] (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice . . . ." (*Id.,* subd. (a).)

■ Evidence Code section 1042 contains legislative determinations that in some circumstances disclosure of neither confidential official information nor the identity of an undisclosed informant is required in order to establish the existence of reasonable cause for an arrest or search or the admissibility of evidence obtained as a result. (Evid. Code, § 1042, subds. (b), (d).) Under that procedure, when the prosecution refuses to disclose information pursuant to such a privilege, the trial court must hear the evidence in camera, if necessary. The court "shall not order disclosure" unless it then concludes from the evidence—including the evidence presented to it in camera—"that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (Evid. Code, § 1042, subd. (d).)

■ The privileges of Evidence Code sections 1040 and 1041 apply, by their terms, whenever the need for confidentiality outweighs the necessity for disclosure; their application is not confined to proceedings involving search warrants or any other particular circumstance. And although Evidence Code section 1042 expressly references its applicability in proceedings to establish the existence of reasonable cause for an arrest or search, it does not limit its

application to those proceedings. Nothing in Evidence Code sections 1040 through 1042 precludes the application of these privileges and procedures in proceedings to establish the sufficiency and legality of wiretap authorization orders. (See *U.S. v. Ippolito* (9th Cir. 1985) 774 F.2d 1482, 1485 [applying procedures used to evaluate sufficiency of search warrant affidavits to determine sufficiency of wiretap authorization affidavits]; *Berger v. New York* (1967) 388 U.S. 41, 55–56 [18 L.Ed.2d 1040, 87 S.Ct. 1873] [applying constitutional requirements for search warrants to analysis of sufficiency of requirements for electronic eavesdropping].)

> 2. *The trial court properly ruled that the procedures outlined in Hobbs apply not only to search warrants, but also to wiretap authorization orders.*

The trial court properly ruled that the procedures outlined in the *Hobbs* decision with respect to search warrants are applicable also to determine the sufficiency of the support for the wiretap authorization orders and the propriety of the nondisclosures of wiretap documentation in this case.

■ In *Hobbs*, the court examined "the inherent tension between the public need to protect the identities of confidential informants, and a criminal defendant's right of reasonable access to information upon which to base a challenge to the legality of a search warrant." (*Hobbs, supra*, 7 Cal.4th at p. 957.) Relying on established precedent, it outlined the procedures courts should use to appropriately balance the justification for law enforcement's refusal to disclose privileged information, on the one hand, with a defendants' right to discovery of the warrant's factual basis, on the other. (*Id.* at pp. 971–973; see *People v. Luttenberger* (1990) 50 Cal.3d 1, 20 [265 Cal.Rptr. 690, 784 P.2d 633].) In this case the trial court ruled that these same procedures apply equally to evaluation of defendants' requests for discovery of the unredacted wiretap documentation, and their motion to suppress the wiretap evidence.

■ By their extension to wiretaps, the *Hobbs* procedures provide that the wiretaps' supporting documentation may validly be withheld from disclosure only to the extent necessary to protect official information or an informant's identity. (*Hobbs, supra*, 7 Cal.4th at p. 971; *Roviaro v. United States, supra*, 353 U.S. at p. 60; *People v. Seibel* (1990) 219 Cal.App.3d 1279, 1296 [269 Cal.Rptr. 313].) "[A] criminal defendant's right to discovery is based on the fundamental proposition that the accused is entitled to a fair trial and the opportunity to present an intelligent defense in light of all relevant

and reasonably accessible information." (*Hobbs, supra,* 7 Cal.4th at p. 965.) "Where disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." (*Roviaro v. United States, supra,* 353 U.S. at pp. 60–61.)[11]

■ These are not the only principles that guide us, however. A defendant's right to challenge a search warrant's supporting affidavit does not automatically negate or overcome the privileges that protect official information and the identity of confidential informants. (*People v. Luttenberger, supra,* 50 Cal.3d at pp. 20–21.) So too, the right to disclosure is not absolute, even when nondisclosure might impair his ability to challenge the accuracy and sufficiency of an affidavit that establishes probable cause or necessity for an investigatory wiretap. "[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense, . . . taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (*Roviaro v. United States, supra,* 353 U.S. at p. 62.) Where these governmental privileges are involved, the trial court " 'retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest.' [Citation.]" (*People v. Luttenberger, supra,* 50 Cal.3d at p. 21.)

It is, however, the defendant's burden to establish the need for the information. A defendant must show more than a " 'mere suspicion' " that the information sought will prove " 'relevant and helpful' " to his defense, or that it will be "essential" to a fair determination. (*U.S. v. Henderson* (9th Cir. 2000) 241 F.3d 638, 645.) Only when a defendant has made a " 'minimal threshold showing' " that the disclosure would be relevant and helpful to at least one asserted defense, the Ninth Circuit Court of Appeals has held, "an *in camera* hearing is [the] favored procedure" to determine whether disclosure is necessary. (*U.S. v. Spires* (9th Cir. 1993) 3 F.3d 1234, 1238; see *Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1276 [113 Cal.Rptr.3d 365] [disclosure of informant's identity required only on showing of reasonable

---

[11] Nor is the defendant limited to challenging only the sufficiency of the supporting affidavit's recitals; a defendant may challenge not just the warrant's facial sufficiency, but also the accuracy of the recited facts. That principle was established with respect to search warrant challenges by *Franks v. Delaware* (1978) 438 U.S. 154, 155–156 [57 L.Ed.2d 667, 98 S.Ct. 2674]. (*U.S. v. Kiser* (9th Cir. 1983) 716 F.2d 1268, 1271.) And federal authorities have held that the same rule applies to the probable cause and necessity requirements for wiretap authorization orders. (*U.S. v. Ippolito, supra,* 774 F.2d. at p. 1485; *U.S. v. Brooklier* (9th Cir. 1982) 685 F.2d 1208, 1221 (*per curiam*) [*Franks* hearing requirements apply to wiretap necessity determination].)

possibility that informant could give evidence that might exonerate defendant, on issue of guilt or an issue on which the defendant has burden of producing some evidence].)

This is wholly consistent with the procedures mandated in Evidence Code section 1041 and subdivision (d) of Evidence Code section 1042, and in *Hobbs*. (Evid. Code, § 1042, subd. (d) [when a party demands disclosure of informant's identity, court conducts hearing, in camera when privilege is claimed, at which parties may present evidence on the issue of disclosure]; *Hobbs, supra,* 7 Cal.4th at p. 971; see *Davis v. Superior Court, supra,* 186 Cal.App.4th at p. 1277 [in camera hearing procedure of Evidence Code section 1042, subdivision (d), strikes appropriate balance between public interest in confidentiality and defendant's right to disclosure]; see also *U.S. v. Fields* (2d Cir. 1997) 113 F.3d 313, 323–324 [trial court's in camera interview of informant, with input as to matters defense considers relevant, adequately protected defendant's rights; disclosure of informant not required]; *U.S. v. Johns* (9th Cir. 1991) 948 F.2d 599, 606 [in camera hearing "provides a balance between the competing interests of the government and the accused"].)

 Because "the warrant affidavit is *presumed* truthful," it is only upon "some showing that the presumptively valid warrant affidavit is questionable in some way" that a defendant can force a review of the accuracy of a search warrant affidavit's supporting facts. (*People v. Luttenberger, supra,* 50 Cal.3d at p. 21; see *Hobbs, supra,* 7 Cal.4th at p. 966.) And where the undisclosed informant's supporting testimony is relevant only in connection with a challenge to the legal sufficiency of a search warrant, rather than to the defendant's guilt or innocence of the charges, the informant's identity need not be disclosed. (*Hobbs, supra,* 7 Cal.4th at pp. 959–960; see *U.S. v. Harris* (7th Cir. 2008) 531 F.3d 507, 515; *U.S. v. Bender* (7th Cir. 1993) 5 F.3d 267, 270.)

Moreover, even search warrants are issued only when a magistrate has been persuaded by the facts stated in the supporting affidavit that good cause justifies the intrusion on the defendant's privacy. That circumstance justifies the rule " 'that where a search is made pursuant to a warrant valid on its face, the prosecution is not required to reveal the identity of the informer in order to establish the legality of the search and the admissibility of the evidence obtained as a result of it.' " (*Hobbs, supra,* 7 Cal.4th at p. 960.) That same justification is all the more applicable with respect to wiretap authorizations, and therefore is all the more reason that the reasoning of *Hobbs* should apply

here. Unlike search warrants, wiretap authorization orders require the personal oath or affirmation of an approved official of the Attorney General's or a district attorney's office, rather than merely any law enforcement officer—thus providing an additional layer of protection against unjustified intrusions. (§ 629.50, subd. (a); see *People v. Jackson, supra,* 129 Cal.App.4th at pp. 144, 159 [law subjects authorization of wiretap to "a much higher degree of scrutiny" than that needed for search warrant, because wiretap authorization cannot be sought by any peace officer].)[12]

█ The procedures outlined in *Hobbs* require that even upon a showing of possible inaccuracies in the supporting affidavit's evidence, the court's review of the privileged material must take place in camera, out of the presence of the defendant and the defendant's counsel. (*Hobbs, supra,* 7 Cal.4th at pp. 972–973.) "This procedure will assure the defendant of a judicial check on possible police misrepresentations, while preventing both unfounded fishing expeditions and inadvertent revelations of the identity of confidential police informants." (*People v. Luttenberger, supra,* 50 Cal.3d at p. 24; see *Hobbs, supra,* 7 Cal.4th at p. 966; *U.S. v. Henderson, supra,* 241 F.3d at p. 645 [in camera hearing is favored procedure to determine whether disclosure is required].)

█ These procedures have long governed challenges to the sufficiency of a search warrant's supporting affidavits. The procedures that the *Hobbs* decision sets forth apply equally to the determination of a defendant's right to disclosure of confidential information in connection with a challenge to wiretaps. The appellants have failed to demonstrate that the trial court abused its discretion by ruling that the procedures set forth in *Hobbs* adequately protected their rights with respect to their requests for disclosure of privileged documentation, and to their challenges to the sufficiency of the wiretap authorization orders in this case.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[12] The principle stated in *People v. Jackson, supra,* 129 Cal.App.4th at page 171, that the law requires disclosure of all statements made by a defendant, is dictum; the court determined that the error it perceived in that case was harmless and did not affect the decision's outcome. Nor does its analysis apply here, in any event. In *Jackson,* the defendants sought disclosure of their wiretap-intercepted statements in order to prepare their defense to the charges for which they were being prosecuted. Here, the issue was whether disclosure was required in connection with their challenges to the wiretap authorizations, not with respect to guilt or innocence of the charges against them—an issue that *Hobbs* held, with respect to search warrants, did not overcome an otherwise valid privilege claim. (*Hobbs, supra,* 7 Cal.4th at pp. 959–960.)

*See footnote, *ante,* page 1040.

## DISPOSITION

The judgment is affirmed.

Mallano, P. J., and Rothschild, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 16, 2013, S206519.