Filed 10/30/15  Duarte v. Freeland CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSE DUARTE, <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> DEMARIO FREELAND et al., <br><br>      Defendants; <br><br><br> HOUSING AUTHORITY COUNTY OF ALAMEDA, <br><br>      Third Party and Respondent. | A141578 <br><br> (Alameda County <br> Super. Ct. No. RG08417377) |

Plaintiff Jose Duarte appeals from the default judgment entered by the trial court on his personal injury claims and the court's denial of his motion for a new trial.  He raises two arguments on appeal.  First, he contends the trial court erred in failing to impose vicarious liability under Education Code section 48904 against defendant Raneta Brown for the willful misconduct of her minor son, defendant Demario Freeland.  Second, plaintiff contends the trial court erred in denying his motion to compel third party Housing Authority of Alameda County (HACA) to provide verified responses and produce documents responsive to a subpoena duces tecum which sought documents pertaining to Brown and Freeland.  We affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2008, plaintiff Jose Duarte, a former teacher at the School for Social Justice in Oakland, filed this action against two students, Demario Freeland and Vuyo Mbuli, and their parents, Raneta Brown and Nosisi Mbuli, respectively. Plaintiff alleged that on December 4, 2003, Freeland actively disrupted plaintiff's class. Freeland eventually left plaintiff's classroom but then returned with Vuyo Mbuli. Plaintiff had locked the door, but when Freeland and Mbuli knocked on the door, he opened it slightly to tell them they could not enter. Freeland and Mbuli then forced the door open, knocking plaintiff backward and causing injury to plaintiff's left arm and shoulder. Later in the day Vuyo Mbuli threatened to "get" plaintiff and told him that plaintiff "better watch [his] back." As a result of this incident, plaintiff became permanently disabled as a result of having a permanently impinged left shoulder.

In his complaint, plaintiff alleged that defendants Brown and Nosisi Mbuli knew that their children Freeland and Vuyo Mbuli had behavior problems and dangerous tendencies and failed to supervise and control their children. Plaintiff alleged causes of action for assault and battery, intentional and negligent infliction of emotional distress, negligence, violation of "the Ralph Act,"[1] violation of "the Bane Act,"[2] civil conspiracy, violation of Civil Code section 43, intentional fraud, negligent misrepresentation, and concealment.[3]

Plaintiff was unable to personally serve defendants because, according to plaintiff, they "fled to evade service of process." The trial court apparently agreed, permitting

---

[1] Civil Code section 51.7, the Ralph Civil Rights Act.

[2] Civil Code section 52.1, the Tom Bane Civil Rights Act.

[3] Originally, plaintiff filed an action in federal court and also named the Oakland Unified School District, the school board and superintendent, and the principal of the School of Social Justice as defendants. On September 11, 2008, the federal claims against these defendants were dismissed after the parties arrived at a settlement. The federal court declined to exercise supplemental jurisdiction over the state claims against Freeland, Mbuli, and their parents, and ordered the complaint dismissed. This state suit followed.

plaintiff to serve the complaint by publication. Plaintiff contends that at some point in time, the superior court clerk entered defaults against defendants.[4] However, the trial court denied plaintiff's January 2012 request for entry of default judgment on the basis that plaintiff had not established the liability of defendants Raneta Brown and Nosisi Mbuli.

On July 18, 2012, plaintiff served a subpoena duces tecum on the Housing Authority of the County of Alameda (HACA). Plaintiff sought 15 categories of documents which pertained "to housing authority participant tenants, Raneta Brown and Demario Freeland." The requested documents included records showing last known employment, tax returns, bank records, records of assets, results from background checks, correspondence with education institutions or other governmental institutions, approved leases, records of outstanding debts, criminal and arrest records, and records of disciplinary actions. Plaintiff stated that these documents would "tend to establish the whereabouts of the defendant, parental custody, liability, and sources for payment of an eventual judgment against the defendant."

HACA objected to plaintiff's subpoena by letter, telling plaintiff: "the information you seek is protected from disclosure under federal and state law." HACA cited the Federal Privacy Act, 5 United States Code section 522a; Welfare and Institutions Code section 10850; Evidence Code section 1040; and the right to privacy contained in the California Constitution.

On November 19, 2012, plaintiff filed a motion to compel HACA to comply with his subpoena. In support of this motion, plaintiff argued that the requested information was relevant to the action because it would allow him to "establish the whereabouts of defendants, parental custody, liability, and sources for payment for an eventual judgment

---

[4] The record does not contain the clerk's entry of default and plaintiff provides inconsistent dates for when default was entered. In his opening brief before us, plaintiff claims the defaults were entered on July 20, 2010 and October 20, 2010. However, in support of this statement he cites a declaration he filed in the trial court that states the defaults were entered "[b]etween February 13, 2009 and March 6, 2009."

3

against the defendants." In an attached "Statement of Items in Dispute," plaintiff responded to the privacy objections raised by HACA. First, he argued that the Federal Privacy Act does not apply to local housing authorities, but rather only federal agencies. Second, plaintiff argued that Welfare and Institutions Code section 10850 did not apply because HACA was not a "Social Services" agency as defined by that statute and because defendants Brown and Freeland were "not receiving social services through [HACA]." Third, plaintiff argued that HACA's Administrative Plan expressly provides that its records are "subject to production pursuant to subpoena." In opposition, HACA reiterated its position that both federal and state privacy law prohibited the disclosure of the identity and records of HACA participants.

On December 20, 2012, the trial court denied plaintiff's motion to compel in a detailed written order. Citing Evidence Code section 1040, subdivision (b), the court stated that HACA "may assert a privilege to refuse to disclose official information acquired in confidence, if the privilege is claimed by a person authorized by the public entity to do so and disclosure of the information is against the public interest because there is a necessity for preserving the [confidentiality of the] information that outweighs the necessity for disclosure in the interest of justice." It found that plaintiff had not made an "adequate showing that his interest in obtaining information in the possession of [HACA] concerning Defendants Raneta Brown and Demario Freeland outweighs the public interest in maintaining the expectation of privacy of participants in the housing program."

The court found plaintiff's arguments as to why the requested documents were necessary to his case to be unpersuasive, stating: "Plaintiff contends that directory information and the HAP contract between [HACA] and Defendants' landlord are relevant to establish their whereabouts. Plaintiff does not explain why this is so, since he admits that he was told that Defendants were being formally evicted in June 2011. Plaintiff contends that information about background checks, educational correspondence, government correspondence, criminal records, arrest records, and records of disciplinary action by [HACA] are narrowly tailored to lead to evidence that

4

Defendant Brown knew about her son's violent tendencies, but that is not accurate. The information sought about Defendant Brown herself has no relevance to her son's violent tendencies, and Plaintiff has not alleged that he was assaulted by Defendant Brown. Information sought about Defendant Freeland, who was a minor at the time, is subject to a high expectation of privacy, and the court will not order disclosure under the circumstances presented. Plaintiff contends that the information about Defendants' last known employment, tax returns, bank records, assets, re-examination, and outstanding debts are relevant to determining the source for payment of a judgment or punitive damages. Plaintiff has not made a sufficient showing to take discovery concerning punitive damages . . . and public policy precludes production of tax returns." As a result, the trial court concluded that plaintiff's subpoena "is overbroad, and to the extent some of the information sought is calculated to lead to the discovery of admissible evidence, Plaintiff's interest in obtaining that evidence is outweighed by the privacy rights of Defendants, and their expectation of confidentiality as applicants for housing assistance." The trial court also rejected plaintiff's argument that HACA's Administrative Plan 2012 required that HACA comply with his subpoena. The court noted that the Administrative Plan stated that confidential information could be released if " 'required under a valid subpoena,' " but that this provision did not, and could not, "answer the question of what constitutes a valid subpoena."

On October 23, 2013, plaintiff moved for default judgment as to all four defendants. Plaintiff supported his request for default judgment with a declaration which described the underlying assault, facts that he believed established the minor defendants' parents were aware of their violent tendencies, and a calculation of the damages he suffered. According to his proposed default judgment order, plaintiff sought $6,692,061 in damages, $4,632,913 in prejudgment interest, $1,488 in costs, and $247,740.33 in treble damages under the Ralph and Bane Acts.

The trial court granted plaintiff's request for a default judgment, in part, on January 21, 2014. In its order, the court determined that plaintiff had established his cause of action for assault and battery against defendants Freeland and Vuyo Mbuli. The

5

trial court stated that the evidence showed that "Plaintiff was attacked twice, the first time by both Freeland and Mbuli, and the second time, later in the day, by Mbuli alone." The court stated that plaintiff had "established that the attacks left him with permanent physical and psychological injuries such that he is permanently disabled and unable to pursue his former career as a teacher or an alternate career as a firefighter."

As to the parent defendants, the court found that plaintiff had "not established liability for his injuries by Defendant Raneta Brown (mother of Defendant Demario Freeland) or Defendant Nosisi T. Mbuli (mother of Defendant Vuyo Mbuli). Plaintiff has not presented competent evidence showing that either of these defendants had knowledge prior to the attacks that her son had a propensity toward violence or that her son was likely to attack Plaintiff. In addition, it appears that Defendant Vuyo Mbuli was an adult at the time of the incidents." The court did, however, find that pursuant to Civil Code section 1714.1, defendant Brown was vicariously liable for plaintiff's medical and hospital expenses, capped at $25,000.

The trial court awarded plaintiff a judgment in the total amount of $2,919,920.76. The court found plaintiff had established: $1,309,796 in lost wages, $12,990.74 in past medical expenses, $75,000 in statutory damages,[5] $250,000 in general damages, $250,000 in punitive damages, $2,265.00 in costs, and $1,006,878.28 in interest. The court found defendants Freeland and Vuyo Mbuli jointly and severally liable for the lost wages, medical expenses, general damages, and punitive damages. The court found that "$12,990.74 [the amount of plaintiff's medical expenses] is the several responsibility of Defendant Raneta Brown." The court based this latter ruling on the ground that pursuant to Civil Code section 1714.1, defendant Brown was vicariously liable for her son's actions, but only to the extent of plaintiff's medical and hospital expenses. The court

---

[5] The court awarded statutory damages under Civil Code section 52, subdivision (b) on the ground that the evidence established that Freeland's and Mbuli's attacks were "based on Plaintiff's perceived national origin." The court assessed $25,000 against Freeland and $50,000 against Vuyo Mbuli because "Freeland and Mbuli both participated in the first attack, and Mbuli alone participated in the second attack."

6

dismissed defendant Nosisi Mbuli on its own motion, finding that plaintiff had "failed to establish a prima facie case against this defendant through admissible evidence."

Plaintiff filed a motion for new trial on February 7, 2014. Relevant to this appeal, plaintiff argued that the trial court erred by failing to impose vicarious liability on defendant Brown for the willful misconduct of her son pursuant to Education Code section 48904. The trial court denied plaintiff's motion for new trial on March 14, 2014. While the trial court did not expressly address plaintiff's vicarious liability arguments in denying the motion, it did state that the "evidentiary rulings and legal conclusions set forth [in the default judgment order] filed on January 21, 2014 are consistent with applicable law."

Plaintiff filed his notice of appeal on April 16, 2014.

## DISCUSSION

Plaintiff raises two arguments on appeal. First, he argues that the trial court erred by not finding Brown liable for her son's willful misconduct under Education Code section 48904. Second, he contends that the court erred by not granting his motion to compel HACA's compliance with his subpoena. We address both arguments in turn.

I.  *Statutory Liability Under Education Code Section 48904.*

In both his motion for a default judgment and his subsequent motion for a new trial, plaintiff requested that Brown be found vicariously liable for defendant Freeland's actions under both Civil Code section 1714.1 and Education Code section 48904. The trial court imposed liability on Brown pursuant to Civil Code section 1714.1, but never expressly addressed Education Code section 48904. Plaintiff contends that the trial court erred in not finding Brown statutorily liable under the Education Code. We disagree.

As discussed above, the trial court found Brown vicariously liable for plaintiff's $12,990.74 medical expenses pursuant to Civil Code section 1714.1. In relevant part, this provision provides: "Any act of willful misconduct of a minor that results in injury or death to another person . . . shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages

7

resulting from the willful misconduct. [¶] . . . [T]he joint and several liability of the parent . . . shall not exceed twenty-five thousand dollars ($25,000) for each tort of the minor, and in the case of injury to a person, imputed liability shall be further limited to medical, dental and hospital expenses incurred by the injured person, not to exceed twenty-five thousand dollars ($25,000). The liability imposed by this section is in addition to any liability now imposed by law." (Civ. Code, § 1714.1, subd. (a).)

Education Code section 48904 imposes additional, broader liability on a parent for her children's willful misconduct in a school setting. In relevant part, Education Code section 48904 provides: "Notwithstanding Section 1714.1 of the Civil Code, the parent or guardian of any minor whose willful misconduct results in injury or death to any pupil or any person employed by . . . a school district or private school . . . shall be liable for all damages so caused by the minor. The liability of the parent or guardian shall not exceed ten thousand dollars ($10,000)[.]" (Educ. Code, § 48904, subd. (a)(1).) Unlike Civil Code section 1714.1, Education Code section 48904 does not limit a parent's liability to a plaintiff's medical or hospital expenses. Rather, it imputes liability to the parent for "all damages" caused by the minor, up to a $10,000 limit. Further, liability under section 48904 is in addition to any liability that may be imposed under Civil Code section 1714.1. Civil Code section 1714.1 provides that the "liability imposed by this section is in addition to any liability now imposed by law," and Education Code section 48904 imposes its liability "[n]otwithstanding Section 1714.1 of the Civil Code."

As we wrote in *Fasuyi v. Permatex, Inc*. (2008 ) 167 Cal.App.4th 681, 691 with regard to default judgments, "It is, of course, the case that there is no opposing party in a default judgment situation. Thus, cases properly recognize that in such situation 'it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through.' "

Before a judge may order a default judgment against a defendant, plaintiff's complaint must state a cause of action against that defendant. "The relief allowable by default is limited not only by the prayer but by the *substantive* allegations of the complaint. Under the 'well pleaded' complaint rule, it is error to enter a default

8

judgment on a complaint that fails to state a cause of action against the defaulting defendant. (6 Witkin, Cal. Procedure [(4th ed. 1997)] Proceedings Without Trial, § 160, p. 574.)" (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 539.)

Further, even though relief might "otherwise . . . have been proper," if it is not demanded in the complaint it cannot be granted by default judgment. (Edmon, Rylaarsdam & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 5:233.)

Here, plaintiff never pled a cause of action for violation of Education Code section 48904 against Brown for the willful misconduct of her son Freeland, nor did he even mention it in the complaint. There was thus no basis for the court to grant a default judgment against Brown on this separate and additional basis for liability.

By contrast, plaintiff did mention Civil Code section 1714.1, albeit in a footnote in his cause of action for assault and battery. The footnote purports to cite a section from a treatise referred to only as "Cal. Civ. Prac. Torts," which itself purports to cite Civil Code section 1714.1. Despite the scant reference to Civil Code section 1714.1, the trial court, in its Order re Request for Default Judgment, construed the reference expansively, stating that plaintiff "allege[d], in a footnote on page seven of the complaint, that Defendant[] Raneta Brown . . . [is] vicariously liable under Civil Code section 1714.1." On this basis, the trial court went on to find liability for Brown under this section, as is reflected in the default judgment.

Plaintiff argues that the complaint "expressly put Brown on notice" of vicarious liability such that she should have been found liable pursuant to Education Code section 48904, subdivision (a). He points to the footnote described above, a sentence in the assault and battery cause of action, and a sentence in the negligence cause of action, which assert that parents are vicariously liable for their children.[6] But, as we have noted,

---

[6] In addition to footnote 1 of plaintiff's complaint, the statements he refers to are: "The intentional harms caused by a student are imputed to the parent and those who are in loco parentis, and are jointly liable for the acts of the student defendants;" and in the

9

these references are plainly insufficient. He also contends that Brown was "doubly" on notice that she was subject to damages for vicarious liability because she was served with a copy of the request for entry of judgment, the proposed judgment, and a memorandum of points and authorities that he prepared in connection with an application for default judgment filed October 23, 2013. In support of the sufficiency of this "notice," plaintiff cites cases that are distinguishable. In both *Robertson v. Wentz* (1986) 187 Cal.App.3d 1281, 1291-1292 (*Robertson*) and *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1571 (*Thrifty-Tel*), plaintiffs were allowed to pursue theories of liability under Civil Code section 1714.1 in the trial court despite not having pleaded the statute in the operative complaints. However, in *Robertson*, where the complaint stated a statutory cause of action under Civil Code section 1714.3 and plaintiff's opposition to summary judgment referred to "section '1714.1 et seq.' as a statutory basis for liability," the appellate court found that defendant had notice of the Civil Code section 1714.1 claim and the facts and law pertinent to the issue were presented in the trial court. (187 Cal.App.3d at p. 1292.) Accordingly, there was no prejudice to the defendant. (*Ibid*.) Similarly, in *Thrifty-Tel*, the appellate court concluded that defendants had notice and failed to show any prejudice where Civil Code section 1714.1 was "expressly invoked in plaintiff's trial brief." (46 Cal.App.4th at p. 1571.) By contrast, here, the question arose in the context of a default judgment where the issues were not "thoroughly explored" during the course of adversarial proceedings. (See *Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1, 16 [" 'It has long been settled law that where (1) a case is tried on the merits, (2) the issues are thoroughly explored during the course of the trial and (3) the theory of the trial is well known to court and counsel, the fact that the issues were not pleaded does not preclude an adjudication of such litigated issues and a review thereof on appeal.' [Citations.]"].)

---

negligence cause of action, "The parents are vicariously liable for the conduct of children, who harmed Mr. Duarte."

10

The trial court did not err in not entering judgment against Brown pursuant to Education Code section 48904 and in denying the motion for new trial on this ground.

II.    *Denial of Plaintiff's Motion to Compel Compliance with the Subpoena*

Plaintiff next argues that the trial court erred in denying his motion to compel HACA's compliance with his subpoena.  He contends the trial court improperly sustained HACA's assertion of official information privilege under Evidence Code section 1040.  "Management of discovery lies within the sound discretion of the trial court, and, therefore, a discovery order is reviewed under the abuse of discretion standard." (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330; see also *People v. Suff* (2014) 58 Cal.4th 1013 [reviewing a trial court's ruling on an assertion of Evidence Code section 1040 privilege under the abuse of discretion standard of review].)  We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to compel.

Evidence Code section 1040 provides, in relevant part, that a "public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and . . . [¶] [d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding."  (Evid. Code, § 1040, subd. (b).)  " 'Official information' " is defined as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."  (*Id.*, § 1040, subd. (a).)

The official information privilege is "expressly conditional, not absolute.  If the public entity satisfies the threshold burden of showing that the information was acquired in confidence, the statute requires the court next to *weigh* the interests and to sustain the privilege only if ' "there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." ' [Citations.]  A trial court commits error under this section if the court fails to make the

11

threshold determination or fails to engage in the process of balancing the interests." (*Marylander v. Superior Court* (2000) 81 Cal.App.4th 1119, 1126.)

Plaintiff contends the trial court made no threshold determination that the records requested by his subpoena were "acquired in confidence" by HACA. However, the trial court expressly found that a "participant in the Housing Authority programs has a strong expectation that information provided to the Housing Authority will remain confidential . . . ." The trial court did not abuse its discretion in arriving at this conclusion. First, HACA's Administrative Plan – submitted by plaintiff to the trial court – expressly provides that participant/applicant information will not be disclosed "unless the participant/applicant has signed a specific release of information." Further, plaintiff's subpoena sought records containing extremely sensitive information about defendants Brown and Freeland, such as their tax returns, bank records, background checks, records of debts, and arrest records.

Plaintiff argues that defendants had no expectation of privacy and the records were not "acquired in confidence" because the Administrative Plan provided that records may be disclosed to "[c]ourts, including information required under a valid subpoena." However, the clerk's issuance of the subpoena requested by plaintiff was a ministerial act; HACA had the right to contest the enforceability of the subpoena, which it did successfully. (See *Johnson v. Superior Court* (1968) 258 Cal.App.2d 829, 835 ["[T]he issuance of a subpoena duces tecum is a ministerial act to be performed by the clerk; the legal sufficiency of the affidavit to warrant the issuance of the subpoena duces tecum is a question for the court to decide."]; see also *Southern Pacific Co. v. Superior Court* (1940) 15 Cal.2d 206, 210-211 [providing that courts have the power to find a subpoena unenforceable].) The trial court found plaintiff's subpoena unenforceable, so the Administrative Plan's provision for disclosure in response to a "valid subpoena" does not undermine the court's conclusion that HACA obtained the requested records "in confidence."

In another argument based on the Administrative Plan, plaintiff contends the trial court, having taken judicial notice of the Administrative Plan, was required to accord

12

binding evidentiary effect to that document.  Specifically, plaintiff argues the judicially noticed Administrative Plan "admits as a matter of law that its records are subject to production responsive to a subpoena to[] '[c]ourts, including information required under a valid subpoena.' "  Plaintiff misapprehends the legal effect of taking judicial notice of a *document* as opposed to a *fact*.  "Although the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable.  [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.)  As we have stated, the validity of a subpoena is a matter for the court to decide.

Plaintiff next raises a number of challenges to how the court applied the balancing test mandated by Evidence Code section 1040.  First, plaintiff contends that the trial court improperly placed the burden on him to establish that the privilege did not apply. Plaintiff relies on the trial court's finding that "Plaintiff does not make an adequate showing that his interest in obtaining information in the possession of Housing Authority concerning Defendants Raneta Brown and Demario Freeland outweighs the public interest in maintaining the expectation of privacy of participants in the housing program." It is well settled that " ' "[t]he party claiming privilege carries the burden of showing that the evidence which it seeks to suppress is within the terms of the statute." ' " (*In re Marcos B.* (2013) 214 Cal.App.4th 299, 308.)  Courts have recognized, however, that Evidence Code section 1040 "does not license fishing trips.  By calling for disclosure in the interest of justice, it compels the claimant to throw into the balance some showing" of "plausible justification" for how the requested information was important to the claimant's case.  (*People v. Superior Court* (1971) 19 Cal.App.3d 522, 530; see also *People v. Acevedo* (2012) 209 Cal.App.4th 1040, 1055 ["It is, however, the [criminal] defendant's burden to establish the need for the information."].)  It was therefore not error for the trial court to examine whether plaintiff had sufficiently articulated a need for the requested information.  Further, in its order, the trial court expressly stated that the public interest asserted by HACA outweighed plaintiff's interests in obtaining the evidence.  The trial court did not improperly shift the burden to plaintiff.

13

Second, plaintiff challenges the trial court's balancing of his asserted need for the requested documents against HACA's asserted interest in preserving the confidentiality of those records. In its order denying the motion, the trial court considered the specific categories of documents sought by plaintiff and articulated its reasons for sustaining the claim of privilege. With respect to plaintiff's asserted reasons for needing the documents, the trial court found that the requested records (specifically, directory information and the HAP contract between HACA and defendants' landlord) were of limited value in locating either Brown or Freeland because plaintiff admitted he was told that they were being formally evicted from their housing in June 2011, over a year before plaintiff issued his subpoena to HACA. As for plaintiff's request for background checks, correspondence, criminal and arrest records, and records of disciplinary action, the court found the request was not "narrowly tailored to lead to evidence that Defendant Brown knew about her son's violent tendencies," because the "information sought about Defendant Brown herself has no relevance to her son's violent tendencies, and Plaintiff has not alleged that he was assaulted by Defendant Brown." The information sought about Defendant Freeland was "subject to a high expectation of privacy" given that Freeland was a minor at the time of the assault. Regarding the request for employment and financial records, which plaintiff asserted were relevant to determining the source of payment of a judgment or punitive damages, the court found plaintiff had not established entitlement to take discovery regarding punitive damages,[7] public policy precluded production of tax returns, and "to the extent some of the information sought is calculated to lead to the discovery of admissible evidence," plaintiff's interest in obtaining that evidence was outweighed by defendants' privacy rights.

The trial court found a "strong interest in preserving the expectation of confidentiality and the right of privacy of applicants for housing assistance." Welfare and Institutions Code section 10850 ensures the confidentiality of "applications and records concerning any individual made or kept by any public officer or agency in

---

[7] A judgment in this matter was not entered until January 21, 2014.

14

connection with the administration of . . . any form of public social services for which grants-in-aid are received by this state from the United States government." (Welf & Inst. Code, § 10850, subd. (a); see Welf. & Inst. Code, § 828.1, subd. (a).) Plaintiff contends that Brown and Freeland received "Section 8" vouchers from HACA. "Section 8" is a shorthand for the "Housing Choice Voucher" (HCV) program by which the United States Department of Housing and Urban Development (HUD) "pays rental subsidies so eligible families can afford decent, safe, and sanitary housing. The HCV program is generally administered by State or local governmental entities called public housing agencies (PHAs). HUD provides housing assistance funds to the PHA." (24 C.F.R. § 982.1.) HACA stated before the trial court (and plaintiff's submissions confirm) that HACA administers the housing choice voucher program. Accordingly, plaintiff's attempt to obtain HACA's records relating to defendants implicates strong statutory privacy rights, and the trial court did not abuse its discretion in finding that the public interest in preserving privacy of such records outweighed plaintiff's needs for the documents.

Plaintiff argues that the trial court erred in concluding that, because Freeland was a minor at the time of the assault, all of his records are privileged. The court, however, made no such ruling. We find no error in the court's refusal to order disclosure of any juvenile records because the confidentiality of such records is well established. (See Welf. & Inst. Code, § 828.1, subd. (a) ["[T]he Legislature reaffirms its belief that juvenile criminal records, in general, should be confidential[.]"]) As to the relevance of documents pertaining to Freeland after he turned 18, the trial court concluded that the subpoena was not narrowly tailored and that the privacy interests asserted by HACA outweighed the interests articulated by plaintiff.

Plaintiff argues that defendants Brown and Freeland "waived any claim to privacy" when they defaulted in this matter and then failed to object to the subpoena. The trial court was not persuaded by this argument, noting that both defendants were served by publication of summons and complaint and neither had appeared in the action. Under these circumstances, the court's refusal to find a knowing waiver of their expectation of privacy was not an abuse of discretion.

15

Next, plaintiff contends the trial court should have granted his motion because "there is no privilege against acting as a witness." According to plaintiff, witnesses may be compelled to testify whether they want to or not, and therefore there was no legal basis for the court "to allow the HACA to conceal the identity, addresses, and phone numbers of percipient witnesses—Brown and Freeland." Plaintiff relies on *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242, 1251-1252 (*Puerto*), but the case does not advance plaintiff's position. *Puerto* addressed the conflict between the right of discovery and the right to privacy in a class action suit by employees against their employer. The information sought was the contact information of employees the employer had already named in discovery responses as potential witnesses; there was no claim of privilege. The trial court ordered an opt-in procedure that gave witnesses the option to participate in the case. In reversing, the appellate court concluded the opt-in mechanism provided "disproportionate protection of this private but under these circumstances relatively nonsensitive information." (*Puerto*, *supra*, 158 Cal.App.4th at p. 1259.) Unlike *Puerto*, here HACA asserted the official information privilege; the document request was extremely broad and sought sensitive consumer, employment and law enforcement records; and it certainly could not "reasonably be supposed [that Brown and Freeland would] want their information disclosed . . . ." (See *id*. at p. 1253.)

Ultimately, plaintiff's contention is that his right to prove his case and enforce his judgment against Brown and Freeland outweighed HACA's right to protect the privacy interests of public housing participants. The court conducted the required balancing of interests and ruled against plaintiff. No abuse of discretion is shown.

**DISPOSITION**

The judgment is affirmed.

16

 

 

 

 

 

 
_____

Miller, J.

 

We concur:

 

 

_____

Richman, Acting P.J.

 

 

_____

Stewart, J.